1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Richard A. Geier, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| M-Qube, Inc.; Mobile Messenger Americas, Inc., d/b/a Mobile Messenger; and John Does 1-20, | ) ) ) ) |
| Defendants. | ) ) |

No. 13-cv-354-TSZ

Mobile Messenger Americas, Inc.'s
Response to Motion for Class
Certification

***Note on Motion Calendar:***
November 28, 2014

ORAL ARGUMENT REQUESTED

FILED UNDER SEAL

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND................................................................................ 3

   A.   The PSMS Industry and Mobile Messenger's Role ....................................... 6

   B.   PSMS Advertising and Landing Pages......................................................... 8

   C.   The PSMS Enrollment Process ................................................................ 10

   D.   Industry Guidelines and Monitoring ......................................................... 12

   E.   Regulatory Suits and Refund Programs .................................................... 14

   F.   Ms. Geier's Subscription ........................................................................ 16

III.  ARGUMENT................................................................................................ 19

   A.   Geier Cannot Establish Rule 23(a)'s Requirements. ................................... 21

      1.   Geier Has Alleged Numerosity, but Only by Defining a Hopelessly Overbroad Class. ............................................................................................... 21

      2.   Geier Cannot Establish Commonality Because He Cannot Identify a Common Wrongful Act Allegedly Affecting  the Class as a Whole. ................................. 21

      3.   Geier Is Not Typical Because He Received a Full Refund, His Wife Did Not Have the Same Experience as the Class, and They Enrolled in a Different Product Than Other Class Members. ....................................................... 25

      4.   Geier Is Not an Adequate Class Representative........................................ 28

   B.   Geier Cannot Satisfy Rule 23(b)(2)'s Requirements for a Class to Pursue Injunctive or Declaratory Relief. ................................................................ 30

      1.   Geier Seeks Primarily Monetary Relief, Making 23(b)(2) Certification Inappropriate under *Dukes*. .................................................................. 31

      2.   Because Mobile Messenger No Longer Handles PSMS Subscriptions, Certification under Rule 23(b)(2) Would Be Improper.............................. 32

   C.   Geier Cannot Satisfy Rule 23(b)(3)'s Requirements of Predominance and Superiority. ............................................................................................. 35

      1.   Geier Cannot Show Common Issues Predominate.................................... 35

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – i

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

2. Geier Cannot Show a Class Action Is Superior to Resolve the Proposed Class's Claims Given Remedies Offered by Carriers with Far Greater Wherewithal than Mobile Messenger. .................................................................................................. 44

3. The Court Should Reject Geier's Half-Hearted Request for Rule 23(c)(4) Certification of a Class Limited to Liability Issues. ................................................... 47

IV. CONCLUSION ................................................................................................................ 47

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – ii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Am. Express Co. v. Italian Colors Rest.*,

5

    133 S. Ct. 2304 (2013) ...................................................................................................20

6

*Avritt v. Reliastar Life Ins. Co.*,
    615 F.3d 1023 (8th Cir. 2010) .......................................................................................43

7

8

*Baby Neal ex rel. Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ..............................................................................................32

9

10

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014) ..................................................................................26, 27

11

*Betts v. Reliable Collection Agency, Ltd.*,
    659 F.2d 1000 (9th Cir. 1981) .......................................................................................27

12

13

*Blough v. Shea Homes, Inc.*,
    2014 U.S. Dist. LEXIS 100600 (W.D. Wash. July 23, 2014) ........................................40

14

15

*Boucher v. First Am. Title Ins. Co.*,
    2011 WL 1655598 (W.D. Wash. May 2, 2011) ..........................................................21, 26

16

*Boucher v. First Am. Title Ins. Co.*,
    2012 WL 3023316 (W.D. Wash. July 24, 2012).............................................................36

17

18

*Brooks v. S. Bell Tel. & Tel. Co.*,
    133 F.R.D. 54 (S.D. Fla. 1990) .....................................................................................26

19

20

*Campion v. Old Republic Home Prot. Co.*,
    272 F.R.D. 517 (S.D. Cal. 2011) ..............................................................................32, 41

21

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) .......................................................................................20, 47

22

23

*Celano v. Marriott Int'l, Inc.*,
    242 F.R.D. 544 (N.D. Cal. 2007) ..................................................................................21

24

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................................32

25

26

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ..............................................................................................20, 35

27

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – i

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Davis v. Homecomings Financial*,
   2007 WL 1600809 (W.D. Wash. June 1, 2007) ..............................................32, 33

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) ......................................................................................28

*Diacakis v. Comcast Corp.*,
   2013 U.S. Dist. LEXIS 64523 (N.D. Cal. May 3, 2013)...........................................32

*Duncan v. Nw. Airlines, Inc.*,
   203 F.R.D. 601 (W.D. Wash. 2001) ...........................................................................31

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .............................................................................3, 28, 29

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) ...............................................................................................36

*Estate of Felts v. Genworth Life Insurance Co.*,
   250 F.R.D. 512 (W.D. Wash. 2008) ...........................................................................39

*Fields v. Mobile Messenger Am., Inc.*,
   2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) ...................................................... *passim*

*Forcellati v. Hyland's, Inc.*,
   2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ...........................................33

*Fosmire v. Progressive Max Ins. Co.*,
   277 F.R.D. 625 (W.D. Wash. 2011) ...........................................................................20

*FTC v. AT&T Mobility, LLC*,
   No. 1:14-mi-99999-UNA (N.D. Ga. Oct. 8, 2014) .............................................15, 44

*FTC v. Figgie Int'l, Inc.*,
   994 F.2d 595 (9th Cir. 1993) ......................................................................................45

*FTC v. Jesta Digital, LLC*,
   No. 1:13-cv-01272-JDB (D.D.C. Aug. 20, 2013) ..............................................15, 45

*FTC v. MDK Media, Inc.*,
   No. 14-cv-5099 (C.D. Cal. Aug. 14, 2014) ........................................................15, 45

*FTC v. Tatto, Inc.*,
   No. 2:13-cv-081912-DSF-FFM (C.D. Cal. Dec. 4, 2013) ..................................15, 45

*FTC v. T-Mobile USA*,
   No. 14-cv-00967-JLR (W.D. Wash. July 1, 2014)....................................................15

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – ii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*FTC v. Wise Media, LLC*,
   No. 1:13-cv-01234 (N.D. Ga. Apr. 26, 2013) ..............................................15, 45

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ...............................................................................20

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ....................................................................21

*Gonzalez v. Proctor & Gamble Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ...............................................................40

*Hanon v. Dataprods. Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...............................................................20, 25

*Harding v. Tambrands Inc.*,
   165 F.R.D. 623 (D. Kan. 1996) .................................................................28

*Helde v. Knight Transp., Inc.*,
   2013 U.S. Dist. LEXIS 147006 (W.D. Wash. Oct. 9, 2013)...........................22, 40

*Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.)*,
   471 F.3d 977 (9th Cir. 2006) ....................................................................38

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012) ....................................................................36

*In re N.D. Cal,. Dalkon Shield IUD Prods. Liability Litig.*,
   693 F.2d 847 (9th Cir. 1982) ....................................................................47

*In re Phenylpropanolamine (PPA) Products Liability Litigation*,
   208 F.R.D. 625 (W.D. Wash. 2002) ...........................................................44

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
   2007 U.S. Dist. LEXIS 89349 (N.D. Ill. Dec. 4, 2007)....................................43

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010) ...............................................................36

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975) ..............................................................45, 46

*Kelley v. Microsoft Corp.*,
   2009 WL 413509 (W.D. Wash. Feb. 18, 2009) .............................................40

*Kelley v. Microsoft Corp.*,
   251 F.R.D. 544 (W.D. Wash. 2008) .....................................................37, 39, 40

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – iii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

*Kelley v. Microsoft Corp.*,
  395 F. App'x 431 (9th Cir. 2010).........................................................................40

*LaCasse v. Wash. Mut., Inc.*,
  198 F. Supp. 2d 1255 (W.D. Wash. 2002) ...........................................................20

*Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*,
  2010 WL 4751659 (S.D. Ind. Nov. 16, 2010), *aff'd*, 654 F.3d 728 (7th Cir. 2011)....................................................................................................................42

*Major v. Ocean Spray Cranberries, Inc.*,
  2013 U.S. Dist. LEXIS 81394 (N.D. Cal. June 10, 2013)....................................27

*Maldonado v. Ochsner Clinic Found.*,
  237 F.R.D. 145 (E.D. La. 2006), *aff'd*, 493 F.3d 521 (5th Cir. 2007) ................34

*Mazza v. Am. Honda Motor Corp.*,
  666 F.3d 581 (9th Cir. 2012)................................................................................43

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008).................................................................................43

*Midland Pizza, LLC v. Sw. Bell Tel. Co.*,
  277 F.R.D. 637 (D. Kan. 2011) ............................................................................42

*Minkler v. Kramer Labs., Inc.*,
  2013 U.S. Dist. LEXIS 90651 (C.D. Cal. Mar. 1, 2013)......................................40

*Moeller v. Taco Bell Corp.*,
  2012 U.S. Dist. LEXIS 104454 (N.D. Cal. July 26, 2012) ..................................47

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ...............................................................................41

*Murray v. Sears, Roebuck & Co.*,
  2014 U.S. Dist. LEXIS 18082 (N.D. Cal. Feb. 12, 2014)....................27, 28, 32

*O'Connor v. Boeing N. Am., Inc.*,
  197 F.R.D. 404 (C.D. Cal. 2000).....................................................................25, 28

*O'Toole v. Northrop Grumman Corp.*,
  499 F.3d 1218 (10th Cir. 2007) ..............................................................................6

*Oshana v. Coca-Cola Co.*,
  225 F.R.D. 575 (N.D. Ill. 2005), *aff'd*, 472 F.3d 506 (7th Cir. 2006)...........41, 43

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ...............................................................................43

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – iv

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

*Picus v. Wal-Mart Stores, Inc.*,
   256 F.R.D. 651 (D. Nev. 2009) ...................................................................43

*Poulos v. Caesars World, Inc.*,
   379 F.3d 654 (9th Cir. 2004) .....................................................................43

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ..............................................................31

*Schwartz v. Avis Rent a Car Sys., LLC*,
   2014 U.S. Dist. LEXIS 121322 (D.N.J. Aug. 28, 2014) ...........................34

*Stern v. Cingular Wireless Corp.*,
   2009 WL 481657 (C.D. Cal. Feb. 23, 2009) ..............................................42

*Thorogood v. Sears, Roebuck & Co.*,
   547 F.3d 742 (7th Cir. 2008) .....................................................................43

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) .....................................................................44

*Vietnam Veterans of Am. v. C.I.A.*,
   288 F.R.D. 192 (N.D. Cal. 2012) ..............................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..................................................................... *passim*

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) .....................................................................35

*Wible v. Aetna Life Ins. Co.*,
   375 F. Supp. 2d 956 (C.D. Cal. 2005) .........................................................6

*Z.D. ex rel. J.D. v. Grp. Health Coop.*,
   2012 WL 5033422 (W.D. Wash. Oct. 17, 2012) .......................................34

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ...............................................20, 30, 36, 44

**State Cases**

*Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*,
   61 Wn. App. 151 (1991) ............................................................................36

*Consulting Overseas Mgmt., Ltd. v. Shtikel*,
   105 Wn. App. 80 (2001) ............................................................................36

*Geier v. Motricity, Inc.*,
   No. 13-2-02290-7 (King Co. Sup. Ct.) ......................................................29

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – v

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wn.2d 778 (1986)............................................................36, 37

*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
    162 Wn.2d 59 (2007)............................................................36, 37

*Laufer v. United States Life Insurance Co. in New York City*,
    896 A.2d 1101 (N.J. Super. Ct. App. Div. 2006) .................34

*Parone v. m-Qube, Inc., et al.*,
    No. 08-CH-15834 (Cook Cnty., Ill. Feb. 24, 2010) ............48

*State v. Ralph William's North West Chrysler Plymouth, Inc.*,
    87 Wn.2d 298 (1976)............................................................35

**Federal Statutes**

Telephone Consumer Protection Act.......................................30, 42

**State Statutes**

Washington Consumer Protection Act, RCW 19.86 ....................... *passim*

**Rules**

Rule 23................................................................................ *passim*
    (a)....................................................................2, 21, 28
    (a)(2)...........................................................................25
    (a)(3)...........................................................................25
    (a)(4)...........................................................................28
    (a) and (b)(3)...............................................................45
    (b).......................................................................20, 30, 42
    (b)(2)................................................................... *passim*
    (b)(3)................................................................... *passim*
    (c)(4)...........................................................................47

**Other Authorities**

Dan Eggen, *Text 'GIVE' to Obama: President's campaign launches cellphone
    donation drive*, Wash. Post, Aug, 23, 2012 (last visited Oct. 31, 2014) ................................6

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – vi

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

## I.      INTRODUCTION

Richard Geier brought this action against Mobile Messenger in late 2012, ostensibly to recover three $9.99 premium short message service ("PSMS") charges appearing on his AT&T Wireless phone bill in early 2012.  In discovery, Geier admitted that long before he filed suit, AT&T resolved his complaints entirely by giving him credits and refunds *exceeding* the amounts AT&T billed.  Further, AT&T implemented a block on his account, ensuring Geier would never pay a similar charge again.  By the time he sued, Geier already had all the relief he could seek in this lawsuit.  Then, in November 2013, Mobile Messenger discontinued supporting PSMS, and the major wireless carriers (including AT&T) announced they would no longer allow charges for PSMS subscriptions to appear on their bills.  Geier therefore has no claim, and no one in his purported class runs the risk of paying another PSMS charge.

On these facts, Geier cannot satisfy Rule 23.  In arguing to the contrary, Geier confuses the merits of the now-discontinued PSMS industry with the procedural question before the Court.  The evidence shows that different consumers, subscribing to different wireless carriers (which had different PSMS business practices) and responding to a variety of advertising and promotions, engaged in PSMS transactions administered through Mobile Messenger to receive a diverse set of mobile content services from scores of different content providers.  The records Mobile Messenger produced in discovery show that many consumers voluntarily opted-in to these PSMS offerings.  For that reason, a federal court last year *denied* a request to certify similar PSMS claims against Mobile Messenger because the plaintiffs "failed to meet their burden to prove that the issue of consent can be addressed with class-wide proof."  *Fields v. Mobile Messenger Am., Inc.*, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013).  The *Fields* court denied certification even though one plaintiff, like Geier here, "offer[ed] evidence that many putative class members, including [his wife], did not consent to being enrolled in the [PSMS] subscription plans" at issue, along with evidence that "wireless carriers issued notices of suspension and termination of [some providers'] subscription plans in part because of abnormally high subscription refund rates."  *Id.*

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 1

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Despite inundating the Court with thousands of pages of exhibits—many unrelated to his proposed class—Geier has not satisfied Rule 23.  He has made no effort to show any differences between *Fields* and his case that would justify certifying a class.  (Geier does not cite *Fields*.)  Mobile Messenger asks the Court to deny certification for the following reasons:

**Rule 23(a).**  Geier fails to satisfy the Rule 23(a) prerequisites to certification.

**Numerosity.**  Geier defined an overbroad class—to the point where it includes PSMS customers who have no possible claim, i.e., people who were not deceived and received what they ordered or who received a refund for everything they paid, as Geier did.  Solely because of this overbreadth, Geier satisfies numerosity.  Had he ***not*** included these customers in his proposed class, Geier could not have satisfied Rule 23(a)'s numerosity requirement.  *See Fields*, 2013 WL 6073426, at *5 (numerosity not satisfied for California class because plaintiffs failed to "take into account the substantial amount of refunds issued to customers").

**Commonality.**  Geier's commonality theory revolves around the notion that Mobile Messenger had a "common" policy of failing to control scores of content providers, who supposedly used varied means to dupe consumers into subscribing.  But the Supreme Court rejected ***exactly*** this commonality theory in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), where plaintiffs faulted Walmart for a "common" practice of conferring discretion on local managers, who allegedly used the discretion to discriminate.  "[T]hat is just the opposite of a uniform … practice that would provide the commonality needed for a class action." *Id.* at 2554.  Geier's other commonality arguments relate to practices that may have affected ***some***, but not all, class members.  As a result, their resolution will ***not*** "resolve an issue that is central to the validity of each one of the claims in one stroke," as *Dukes* requires.  *Id.* at 2551.

**Typicality**.  Because Geier received a refund for his PSMS charges, he does not have a claim typical of class members who have ***not*** received refunds.  Further, Geier bases his claims on the theory class members unwittingly subscribed to PSMS programs by inputting information in response to content providers' deceptive advertising and text messages.  But his wife asserts a different claim, insisting (a) she never input ***any*** information and (b) she never

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

saw *any* text messages, much less deceptive ones.  Because proving Geier's claim based on his wife's testimony will *not* prove the class claims, Geier cannot show typicality.  Further, Geier seeks to represent subscribers to programs other than the one to which his wife subscribed, for which his claims cannot be typical—as Geier agreed in deposition and other courts have held.

**Adequacy.**  Geier has testified he is *not* looking for a further refund.  As a result, he "would not share an interest with class members whose primary goal is to obtain" a refund, making him an inadequate class representative under Ninth Circuit law.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011).  Geier's decision to settle an identical lawsuit against another PSMS aggregator for his personal enrichment and payment to his lawyers in this case without *any* benefit to the class, also makes him inadequate.

**Rule 23(b)(2)**.  Geier cannot satisfy Rule 23(b)(2) since this case deals primarily with damages, not injunctive relief.  Geier put a block on his phone to prevent further third party billing, and Mobile Messenger is no longer in the PSMS business that lies at the core of this action.  Under settled law, a Rule 23(b)(2) class would be flatly improper on these facts.

**Rule 23(b)(3).**  Individualized issues predominate on the class damages claim.  Geier's own evidence shows class members may have seen any one of a wide variety of different ads before subscribing.  Further, the Court cannot resolve on a class basis the question whether individual class members authorized their PSMS subscription charges.  That forecloses class certification, as the district court found on similar facts in *Fields*.  Nor would a class action be superior, as Rule 23(b)(3) requires.  AT&T Wireless and T-Mobile have already made full refunds available to all of their PSMS customers, without litigation, and the FTC has promised more action.  In the circumstances, class action litigation does not represent a superior option.

## II.   FACTUAL BACKGROUND

Geier's First Amended Complaint ("FAC") asserts AT&T Wireless billed him $9.99 per month, from January through March 2012, for Pow! Mobile's PSMS subscription program— even though he alleges neither he nor his wife subscribed to that program.  FAC [Dkt. 13] ¶¶ 5.21-5.25.  Although he received credits from AT&T that fully offset those charges, Geier

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 3

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

sued Mobile Messenger in October 2012.  His FAC asserts a claim under the Consumer

Protection Act ("CPA"), as well as common law claims for conversion and unjust enrichment.

Geier now asks the Court to certify the following class:  "All residents of Washington

who, at any time from October 17, 2008 to the present, were enrolled through a website for one

of Mobile Messenger's white-label PSMS programs."  Mot. 1:12-14.  The proposed class as

defined includes every Washington resident who subscribed to a Mobile Messenger full-service

("white label") PSMS product, without regard to (a) the content provider or website[1] through

which the user subscribed; (b) whether the user saw deceptive advertising before enrolling;

(c) whether the user authorized the charge; (d) the carrier to whom the consumer subscribed,

which was solely responsible for presenting charges on bills; or (e) whether the user received a

complete refund.  Thus, Geier no longer restricts the class to consumers who allegedly paid for

unauthorized PSMS subscriptions, as pled in his FAC.  *See* FAC ¶ 4.1.  Instead, he includes

consumers who ***knowingly*** authorized PSMS charges—contradicting his testimony that he was

"not seeking to represent people who had charges appear on their phone that they did ask for."

R. Geier Dep. 27:11-14 (Prince Decl., Ex. 1).

Geier's Motion also changes his claims.  Geier now alleges Mobile Messenger violated

the CPA by "enroll[ing] consumers through common unfair and deceptive advertising and

landing pages" and sending "deceptive text messages to consumers during the enrollment

process."  Mot. 8:14-17.  Further, he asserts Mobile Messenger "manipulated refund rates,"

"circumvented carrier suspensions," "employed unfair and deceptive descriptors for consumer

billing," and "deceptively rel[ied] on its so-called 'double opt-in'" compliance mechanism to

"deflect consumer complaints."  *Id.* 8:17-9:3.  These allegations have nothing to do with

Geier's personal claims:  Geier never alleges that he or his wife were duped by deceptive

advertising, text messages, or billing descriptors, or even that Mobile Messenger deflected their

complaints by invoking its double opt-in consent mechanism.  *Id*. 31:13-32:11 (detailing

---

[1] The class definition contemplates subscription through "a" website, encompassing every user who subscribed on the web.  Mobile Messenger did ***not*** manage or control the websites through which PSMS customers enrolled.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 4

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

1   Geier's personal allegations).

2       Choosing to ignore his wife's and his own personal experience, Geier's Motion adopts a

3   simple strategy.  He has inundated the Court with thousands of pages of guidelines and policies

4   Mobile Messenger adopted to protect consumers, notices from industry watchdogs policing

5   violations of those guidelines by third parties (many not even pertinent to his claims), and

6   internal Mobile Messenger emails taken out of context.  From these, Geier hopes the Court will

7   tar every PSMS subscription with a common brush.  But Geier's own evidence shows PSMS

8   advertising largely **_followed_** rigorous industry guidelines.  For example, in January 2012—the

9   month Geier's wife subscribed—75% of PSMS ads and landing pages **_fully complied_**:



Marshall Decl. [Dkt. 83-1] at 214, Ex. 17.  Of the PSMS advertisements sampled that month,

only 22% had "moderately severe" (i.e., severity 2) compliance issues.  *Id.*; *see also* Marshall

Decl. [Dkt. 79], Ex. 24 at 1 (CTIA Monitoring and Compliance Playbook).  Only a tiny

sliver—3%—had "severe" (i.e., severity 1) issues.  Marshall Decl. [Dkt. 83-1] at 214, Ex. 17.

Geier's examples of deceptive advertising sample a sliver of the pie, not the pie as a whole, and

do not reflect the sort of uniform fraudulent scheme Geier attempts to portray in his motion.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 5

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

**A.    The PSMS Industry and Mobile Messenger's Role**

Until the PSMS industry ended in 2013, PSMS program content would be delivered to consumers' cell phones using a four to six digit number known as a "short code."  Marshall Decl. [Dkt. 83-1], Ex. 4 at 4.  Each short code was typically associated with a particular PSMS campaign; when a consumer was charged for the mobile content, the short code would appear on the consumer's wireless bill, sent by the wireless carrier (not Mobile Messenger).  *See id.*, Ex. 5 and Ex. 6 at PL-GEIER_MQUBE_000056.  Geier's motion focuses on PSMS subscriptions, including the reverse auction game to which his wife subscribed.  But scores of charities and political organizations also used PSMS services, allowing users to send text messages to a short code and donate money or subscribe to programs, paying via their mobile phone bill.  For example, if a cell phone user texted "GIVE" to short code 90999, the user donated $10 to the Red Cross, with the donation appearing on the user's cell phone bill; similarly, users could contribute $10 to President Obama's campaign by texting "GIVE" to short code 62262.[2]  Geier does not make clear whether his class includes these donors.

Any PSMS offering required the participation of wireless carriers, which billed their customers for PSMS content; content providers, which were responsible for marketing and advertising PSMS programs to consumers; and publishers, which contracted with content providers to advertise PSMS programs.  A PSMS offering also required the support of an aggregator, such as Mobile Messenger or m-Qube.  Unlike carriers and content providers, aggregators did ***not*** contract with consumers.  Instead, they contracted with carriers and content providers.  *See Bonato Dep. 16:8-10 (Prince Decl., Ex. 2); Cacciato Dep. 67:7-10, 74:13-20 (Prince Decl., Ex. 3).  Mobile Messenger and m-Qube provided a unified connection for

---

[2] *See* Am. Red Cross, Text Message Donations, http://www.redcross.org/support/donating-fundraising/donations/text-messaging (last visited June 16, 2014); Dan Eggen, *Text 'GIVE' to Obama: President's campaign launches cellphone donation drive*, Wash. Post, Aug, 23, 2012, http://www.washingtonpost.com/politics/text-give-to-obama-presidents-campaign-launches-cellphone-donation-drive/2012/08/23/5459649a-ecc4-11e1-9ddc-340d5efb1e9c_story.html (last visited Oct. 31, 2014).  The Court may take judicial notice of the Red Cross and Washington Post webpages purely for illustrative purposes.  *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965-66 (C.D. Cal. 2005) (taking judicial notice of Amazon.com webpages).

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 6

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

content providers, allowing them to connect with the high capacity short code messaging facilities of the wireless carriers.  *See* Pajaczkowski Decl. [Dkt. 18] ¶ 2.  Aggregators thus provided telecommunications and billing services to content providers.  *Id.*

Mobile Messenger had both pure aggregation clients and full-service (or "white-label") clients.  Bonato Dep. 69:2-16 (Prince Decl. Ex. 2).  Because Geier asks the Court to certify a class limited *only* to customers of "white-label PSMS programs," Mot. 1:12-14; 3:24-27 & n.3, this brief will focus on them.  For full-service clients, Mobile Messenger until mid-2009 provided "only text-message and ringtone, wallpapers and other binary content sent to subscribers' cell phones short codes."  Machock Decl. ¶ 6.  From mid-2009, however, Mobile Messenger made available template websites or "portals," which content providers could label with their own brand and market as their own—but "not all full-service clients used the portals."[3]  *Id.  See also* Bonato Dep. 93:14-25 (Prince Decl. Ex. 2); Cacciato Dep. 38:10-17; 47:12-17 (Prince Decl., Ex. 3).  For those full-service clients that used them, the portals allowed users to download ringtones and wallpapers or to play games, such as the reverse-auction game to which Geier's wife subscribed.  *Id.* 71:2-20.  Mobile Messenger also administered a state-of-the-art double opt-in system for full-service clients, which ensured that *every* subscriber (a) received a text message disclosing the product and price and (b) confirmed that text message by typing its unique four digit PIN number into the advertising web page.  Bonato Decl. ¶ 3.  Mobile Messenger went to great expense and effort to enhance and strengthen its opt-in system.  *Id.*; Machock Decl. ¶¶ 11, 12.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████  Machock Class. Dec. ¶ 5.  ██████████

████████████████████████████████████████

██████████████████████████████████

---

[3] For aggregation clients, Mobile Messenger's affiliate, m-Qube, provided the gateway technology for "sending and receiving messages" but left all management of content programs to the content providers.  *Id.* 68:1-19.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 7

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## B.     PSMS Advertising and Landing Pages

Mobile Messenger's content providers—which ranged from charities, such as the Red Cross, to federal political committees to Fortune 500 companies to small internet marketing firms—had responsibility for marketing and advertising their own PSMS campaigns.  Machock Decl. ¶ 7; *see also id.* Ex. 4 (carrier billing summary).  Thus, while Geier's motion focuses on allegedly deceptive PSMS ads or landing pages, Mobile Messenger had no control over providers' advertising and landing pages as they appeared on the internet.  Bonato Dep. 34:13-22 (Prince Decl., Ex. 2); Cacciato Dep. 78:22-79:5, 136:15-17 (Prince Decl., Ex. 3).

Once a content provider launched a PSMS campaign, it contracted with third-party online publishers to run advertisements on the publishers' websites.  Cacciato Dep. 74:13-20; 75:7-76:9 (Prince Decl., Ex. 3) (Pow! "hire[d] publishers to sign up to run ads in association with [Pow!'s] short codes"); Prince Decl., Ex. 6 (publisher contract).  Although Mobile Messenger had advertising templates that fully complied with MMA guidelines, which providers could receive on request, providers or their advertising companies generally created *their own advertising*.  Cacciato Dep. 58:15-59:4 (Prince Decl., Ex. 3).  Once the provider or its advertising vendor created the provider's ads, they would be sent to online publishers, which sell and display advertising on their websites to generate revenue.  *Id.* 76:3-25 (example of Pow! advertising strategy).  After a PSMS provider sent an advertisement to a publisher, the publisher took responsibility—which meant it could change the advertisement even without the content provider's knowledge.  *Id.* 76:15-21 (noting publisher "showed ad as it was created by the publisher or the way it was to be run by the publisher," not as provider sent it).

Pow! Mobile was the only content provider that testified as to advertising practices.  Its CEO testified "all the ads that we provided to our [publishers and networks] were the ads that were approved by the CTIA's rules and regulations."  *Id.* 219:12-14.  Pow! Mobile, like other content providers, had a financial incentive to stop publishers from deceptive advertising: because it paid publishers and marketing affiliates $10-$12 per subscription, as well as refund penalties to carriers and Mobile Messenger, it *lost* money when disaffected subscribers

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 8

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

cancelled. *Id.* 237:15-238:9.  For that reason, Pow! Mobile "blacklisted" publishers if it discovered they altered ads, barring them from running future advertising.  *Id.* 102:16-103:12; 101:1-5.  But Pow! Mobile "had no idea that ads were run on certain publications until we got an audit, and we found that our ad was run on a publication," which could "generate several individual audits." *Id.* 136:15-17; 140:23-24.  Nor could Mobile Messenger monitor the landing pages consumers used to enroll.  "There's no way Mobile Messenger would be able to go and read whatever the exact URL contains and validate the content of [a] landing page while the subscription is happening."  Bonato Dep. 34:16-19 (Prince Decl., Ex. 2).

Even though the evidence shows most PSMS advertising complied with industry guidelines, Marshall Decl. [Dkt. 83-1] at 214, Ex. 17, Geier tries to discredit PSMS advertising as a whole, trumpeting the number of audit notices he filed in an undifferentiated lump.  But leaving aside the statistical information showing that most advertising on the web complied, a large number of Geier's notices report industry ***compliant*** advertising.  *See, e.g.,* Marshall Decl. [Dkt. 79] at 468-69 (carrier-approved audit of "main website" and "messaging" system), 484 (same), 489 (same), 503 (same), 507 (same).  And many other audits reflect minor, technical errors that fall far short of findings of deceptive advertising.  *See* Marshall Decl. [Dkt. 83-1] at 216, Ex. 17.[4]  Geier's filing contains ***many*** (and varied) examples of technical violations, which had no conceivable bearing on the validity of consumer consent.  *See, e.g.*, *id.* at 280, Ex. 25 (ad lacked "link to privacy policy"), at 334 (ad "fail[s] to display first three lines of T&Cs above fold"), at 336 (same); *see also* Machock Decl., Ex. 6 (no link to privacy statement), Machock Decl., Ex. 7 (inconsistent display of program name); Marshall Decl. [Dkt. 79], Ex. 89 at line 16 ("Displays viewer data or hash code"); line 37 ("No clear indication of privacy policy"); line 38 ("No customer contact information").

---

[4] In January 2012 (the month Ms. Geier subscribed), for example, the most common cause of violations was "[s]ubstitution details hidden in T&Cs."  *Id.* at 216, Ex. 17.  This meant the ad failed to clarify that content (such as ringtones or wallpaper) was "restricted to [a] specific carrier … (e.g., 'Works only on carriers X, Y, and Z'; 'Music Alerts unavailable on carrier Z')."  Marshall Decl. [Dkt. 79] at 346, Ex. 24.  The second most common violation was the lack of a "legal age or parental permission disclosure," meaning the ad omitted a required statement that the "user must be 18 years or older or have permission from a parent."  Marshall Decl. [Dkt. 83-1] at 216, Ex. 17; *id.* at 349, Ex. 24.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### C.    The PSMS Enrollment Process

After seeing PSMS advertising, mobile phone customers could enroll in PSMS programs in three primary ways:  web opt-in (through a website), mobile-originated text message (through texting a keyword to a short code using a mobile phone); and interactive voice recording (by automated phone call).  Bonato Dep. 96:19-97:13 (Prince Decl., Ex. 2). Geier limits his proposed class to those who enrolled through a web opt-in.  *See* Mot. 1:12-14.

In a web opt-in enrollment, a user clicks on an advertisement, which takes the user to a landing page on the internet.  *See* Bonato Dep. 30:12-18 (Prince Decl., Ex. 2); Cacciato Dep. 240:20-241:2 (Prince Decl., Ex. 3).  Geier admits Mobile Messenger did not create or control these landing pages, any more than it controlled the advertisements.  Mot. 6:22-7:1.  On the landing page, the consumer would enter a phone number and request a PIN message be sent to her phone.  *See* Bonato Dep. 95:13-96:15 (Prince Decl., Ex. 2).  That PIN message would contain a unique, four-digit PIN number, Cacciato Decl. [Dkt. 17] ¶ 25, along with notice of the service as well as the monthly charge, denoted with a dollar sign and numerals, such as "$9.99."  *Id.* ¶ 27; Bonato Decl. ¶ 3.  (The PIN would be generated in real time by Mobile Messenger's system and sent only to the consumer's handset, via text message.  *Id.* ¶ 3.)  The consumer would then enter that PIN on the landing page, verifying enrollment at Mobile Messenger's system, which would confirm that the PIN entered by the user was the same as the PIN texted to the user.  The content provider would send a confirmation message via Mobile Messenger that repeated the advice of charge and instructions for how to end the subscription, i.e., by texting the word "STOP."  Bonato Dep. 95:14-96-:15 (Prince Decl., Ex. 2).

As Mobile Messenger's designee explained, a consumer ***could not be enrolled***—no matter what advertising or landing page they saw—without receiving a PIN message on their mobile phone and entering it back on the landing page. ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████

████ Geier thus does not point to ***any*** instance in which an auditor of a full-service program

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 10

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

failed to receive both a PIN message and a confirmation message with notice of the charge.

Geier faults the web opt-in process on the grounds that a PIN "message was difficult for an average consumer to decipher" because, in part, the messages "lumped" words together and "omit[ted] spaces between the characters." Mot. 20:3-6.  But Geier ignores that text messages are limited to 160 characters and, according to industry guidance, ***must*** contain in those 160 characters the product description, program name, the "mechanism to complete opt-in," customer care contact information, pricing, and that "[m]essage and data rates may apply"—a tall order.  Machock Decl., Ex. 5 (at MQ000332).  Mobile Messenger and the carriers could require all of this information in 160 characters only by abbreviating and omitting spaces, and industry guidelines expect just that.  *See, e.g.*, Marshall Decl.[Dkt. 79], Ex. 23 (line 31973) (noting opt-in message ***must*** state "Msg&Data Rates May Apply").  *See* Prince Decl. Ex. 15 at 3 n.4 (FEC Advisory Opinion 2012-17) (approving as clear and readable further abbreviations in political donation programs setting forth required donor affirmations).

Rather than offer evidence Mobile Messenger had a policy or standard practice of permitting "unfair and deceptive text messages," Mot. 18:21-22, Geier submits a carefully curated collection of violation notices from the CTIA and argues his sample proves a common practice.  *Id.* 18-19. But Geier's sample actually includes ***many*** violation notices showing fully-compliant PIN messages.  *See, e.g.,* Marshall Decl. [Dkt. 79] at 437, Ex. 24 (eMQ003431-0003); *id.* at 400 (eMQ002742-0004); *id.* at 367 (eMQ001785-0001), *id.* at 468 (eMQ003914), *id.* at 484 (eMQ003918); *id.* at 750, Ex. 26 (MQ001118).  Further, many of Geier's examples of CTIA violation notices plainly have no bearing on whether consumers "unwittingly" enrolled, as he claims.  The CTIA and carriers noted violations for a wide range of technical infractions, such as "help" messages that failed to "display remaining credits"; opt-in messages that displayed a website URL rather than the "program name"; and opt-out messages telling the user she has been "unsubscribed" rather than "terminated."  *See, e.g.,* Marshall Decl. [Dkt. 79] at 753, 787; Prince Decl., Ex. 14 at 16 (MQ00323).  (Further, Geier includes numerous notices dealing ***not*** with the full-service campaigns at issue on this Motion but with aggregation clients

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 11

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

that took responsibility for everything but m-Qube's gateway technology.)

Finally, even if a consumer mistakenly responded to a PIN message and unwittingly enrolled, she could receive a refund with no questions asked.  Machock Decl. ¶ 16.  Geier's proposed class includes all of these refunded consumers—who have no damages.

**D.      Industry Guidelines and Monitoring**

As Geier admits, the PSMS industry policed itself.  Leading trade groups—the CTIA – The Wireless Association® and the Mobile Marketing Association ("MMA")—published industry guidance on consumer friendly best practices in the PSMS industry.  *See* Machock Decl., Ex. 5 (CTIA Compliance Assurance Solution: Mobile Commerce Compliance Handbook); *id.*, Ex. 1 (Mobile Marketing Association: U.S. Consumer Best Practices for Messaging); Marshall Decl. [Dkt. 79] at 272, 341; Exs. 20, 24.  The CTIA and MMA had hundreds of specific PSMS guidelines that describe potential compliance issues down to every detail, ranging from low severity (e.g., the font size, color contrast, and pixel size of advertisements) to high severity (e.g., barring illicit or adult content).  Machock Decl., Ex. 5 at 10, 13-14.  The CTIA performed "in-market monitoring," i.e., it reviewed and tested advertisements and promotions as they appeared in the market.  The CTIA (or its contractor, WMC) sent "program violation notices" alerting carriers, aggregators, and content providers when they found violations of CTIA and MMA standards.  *Id.* at 10.

In addition to the CTIA, each carrier administered a compliance program to make sure it billed customers only for authorized charges.  *See* Machock Decl., Ex. 1 at 3-5 (MMA U.S. Consumer Best Practices, listing guidelines unique to each carrier).  Compliance measures varied among carriers, but they typically involved audits of PSMS advertising, subscription processes, and text messages, as well as tracking refund rates and imposing incentives for compliance and penalties for non-compliance.  *See id.*; *see also* Machock Decl., Ex. 2 (Key to U.S. Carrier Playbooks) Marshall Decl., Ex. 17 at 30 (listing carriers' different refund rate threshholds); *see also* Machock Decl., Ex. 3, 7, 9.  For example, AT&T (Geier's carrier) published a detailed "Customer Experience Policy" governing consumer opt-ins, certification

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 12

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

of PSMS campaigns, and advertising guidelines.  *See* Machock Decl., Ex. 3.  AT&T even

created an audit division ████████████████████████████████████████████████████

████████████████████████████████████ consumers authorized subscriptions billed by

AT&T.  Machock Decl., Ex. 3 (MQ000135).  *See also id.*, Exs. 9, 10, 11 (T-Mobile, U.S.

Cellular, Verizon guidelines and "best practices").  Sprint likewise monitored the performance

of PSMS programs in-market, including a review of advertising, to ensure they billed only for

authorized charges.  *See* Prince Decl., Ex. 4 at 87-88; Ex. 7 § 3.2.  And all of the carriers

imposed financial penalties on content providers who failed to meet guidelines.  *See, e.g.*,

Machock Decl., Ex. 8 (carrier billing summary imposing "excessive refund fee").

Mobile Messenger itself created financial incentives for content providers to comply

with advertising guidelines.  For example, it imposed a "Consumer Protection Incentive" fee on

content providers that, along with penalties imposed by carriers, could amount to tens of

thousands of dollars a month.  *See* Marshall Decl. [Dkt. 79], Ex. 65.  And Mobile Messenger

employed a 40-person audit team "doing regular screening of [web] pages" and conferring with

consumers about possible program violations, as well as working with the CTIA.  Bonato Dep.

129:13-132:1 (Prince Decl., Ex. 2).  Rather than address this compliance structure, Geier points

to one account manager, Michael Anthony, whom he claims regularly violated Mobile

Messenger policies.  *See* Mot. 24.  But Geier takes no issue with the policies themselves or the

compliance apparatus, and he fails to mention Mobile Messenger's incentives for compliance.

Geier faults Mobile Messenger for continuing to "work with" a content provider after

one carrier terminated it.  Mot. 24:19-25:2.  But the carriers had varied penalty, suspension and

termination standards, which meant that one carrier's disqualification of a content provider had

no significance for the provider's ability to do business with another.  Nor did one carrier's

decision as to a particular content provider relieve Mobile Messenger of its obligations as a

vendor to that content provider or the other carriers.  For example, T-Mobile put content

providers on a "performance improvement plan" if their refund ratio exceeded 15%, and it

suspended individual short codes after three months above that rate.  Prince Decl., Ex. 20 at 53.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 13

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

AT&T, by contrast, often suspended short codes if a content provider had a refund ratio above 18% and a severity 1 audit in the same month.  *Id.*, Ex. 6; *See* Marshall Decl., Ex. 73.  And Verizon suspended a short code at a 5% refund rate and terminated all short codes for any content provider who exceeded 8%.  Marshall Decl., Ex. 4 at 30.  Finally, Sprint created financial penalties linked to refund rates, imposing up to a 25% penalty on revenue and termination if refund rates exceeded 17%.  *Id.* at 31.  Thus, while Verizon might terminate a provider for a 9% refund rate, other carriers might welcome that same provide.  In short, as the Senate Commerce Committee observed, "carriers had wide discretion in responding to indicia of vendor problems such as high refund rates."  Sen. Comm. on Commerce, Science and Transportation, "Cramming on Mobile Phone Bills: A Report on Wireless Billing Practices" (July 30, 2014) at 35 (Marshall Decl. [Dkt. 83-1], Ex. 17 at 168 of 210).

Further, contrary to Geier's simplistic explanation, Mot. 20:12-24, climbing refund rates do not imply deceptive advertising.  Carriers measured refund rates by dividing the dollar value of refunds by the dollar value of subscriptions.  *See* Anthony Dep. 215:3-6 (Prince Decl., Ex. 4).  As a mathematical matter, refund rates increased when subscription volume decreased, without regard to the reason for falling subscriptions:  because refunds must lag subscriptions (i.e., users do not ask for refunds until subscriptions have been billed), refund rates climb as subscriptions diminish, even if subscription volume drops because (for example) the content provider marketed PSMS services to the wrong demographic or simply cut back on advertising.  *Id.* 208:24-209:19; 216:11-217:2 ("refund rates might be high just because the content provider stopped investing in a short code"); *see* Marshall Ex. 73 (AT&T analysis noting ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████  And each refund corroborated that either the carrier or Mobile Messenger ***succeeded*** in alerting a consumer to the PSMS charge.

### E.      Regulatory Suits and Refund Programs

Despite these compliance programs, the PSMS system did not in the end satisfy Mobile Messenger or the carriers that it satisfied consumers.  By November 2013, Mobile Messenger

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 14

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

discontinued all PSMS charges, and carriers discontinued all PSMS charges other than charitable giving programs.[5]  Machock Decl. ¶¶ 2, 14.  The Attorneys General of all fifty states, as well as the Federal Trade Commission (FTC), the Federal Communications Commission (FCC), and the Senate Committee on Commerce, Science, and Transportation have scrutinized the PSMS industry.  The FTC in particular has been active in pressing PSMS-related claims in court, suing several content providers and their executives.  *See FTC v. MDK Media, Inc.*, No. 14-cv-5099 (C.D. Cal. Aug. 14, 2014); *FTC v. Jesta Digital, LLC*, No. 1:13-cv-01272-JDB (D.D.C. Aug. 20, 2013); *FTC v. Tatto, Inc.*, No. 2:13-cv-081912-DSF-FFM (C.D. Cal. Dec. 4, 2013); *FTC v. Wise Media, LLC*, No. 1:13-cv-01234 (N.D. Ga. Apr. 26, 2013).

In addition, the FTC this year sued two major wireless carriers with respect to PSMS practices, i.e., AT&T Wireless and T-Mobile USA, Inc.  *See FTC v. AT&T Mobility, LLC*, No. 1:14-mi-99999-UNA (N.D. Ga. Oct. 8, 2014); *FTC v. T-Mobile USA*, No. 14-cv-00967-JLR (W.D. Wash. July 1, 2014).  Before being sued, in June 2014, T-Mobile announced a refund program allowing ***any*** past or present customer—including members of Geier's proposed class—to receive a full refund of any unauthorized PSMS charges.  *See* www.t-mobilerefund.com (giving consumers until June 30, 2015 to file claims).  Prince Decl., Ex. 9 (printout of www.t-mobilerefund.com, describing voluntary refund program).  And as part of a consent decree with the FTC, AT&T —the Geiers' carrier—agreed to a comprehensive refund program, which requires AT&T to notify individual customers of their right to refunds.  *See* Stip. Order for Permanent Injunction ¶ VI.I at 23-24, in *FTC v. AT&T Mobility, LLC*, No. 1:14-mi-99999-UNA [Dkt. 2060-2] (N.D. Ga. Oct. 8, 2014).  Prince Decl., Ex. 10 (Stip. Order).  Further, in 2011, Verizon implemented a highly-publicized refund program, covering much of Geier's proposed class.  *See* Prince Decl. Ex. 8 (March 10, 2011 Verizon Article).

Mobile Messenger has no plans to resume PSMS.  *See* Machock Decl. ¶¶ 2, 17.  Even if it did, it would have no market, as no carriers currently allow PSMS programs to bill on their

---

[5] Mobile Messenger learned of violations of its own internal controls over its PSMS management system in November 2013.  When that happened, it notified the major carriers, advised them of the issue, and requested they shut down Mobile Messenger's PSMS gateway.  Machock Decl. ¶¶ 2, 14.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 15

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

wireless bills.  *Id.*  Nor does Mobile Messenger have any plans to enter the market for "carrier based billing" programs.  *Id.*  Instead, it remains a vendor to leading large scale businesses for non-premium short code text and multimedia messaging through the nation's carriers.  *Id.* ¶ 17.

### F.    Ms. Geier's Subscription

Geier does not accurately or completely summarize the facts relating to his wife's enrollment in the Pow! Mobile PSMS program.  In early 2013, Mobile Messenger filed a declaration from Pow! Mobile, corroborating details on each step of Ms. Geier's enrollment. (At the time she enrolled, Ms. Geier was known as Margaret Wells.)  "[O]n January 1, 2012, at 2:58:33 PM EST, a user at the IP address 98.232.155.120, which appears to be in Longview … and is serviced by Comcast Cable Communications Inc., began the process of subscribing to Pow! Mobile's reverse auction game mobile service."  Cacciato Decl. [Dkt. 17] ¶ 18.  The user entered Ms. Geier's cell phone number, which "caused a text message to be sent back to the designated cell phone by operation of Mobile Messenger's commercial messaging gateway." *Id.* ¶ 23.  That message included "a secure unique PIN to enter back into the website" to verify the user had control of the device.  *Id.* ¶ 24.[6]  Within minutes, "the user at IP address 98.232.155.120 [corresponding to a cable modem in Geier's geographic area] claiming to be the owner or authorized user of cell phone number (360) 270-XXXX entered the secure PIN 5935 into the PIN Submit Page" and then "clicked the continue button, confirming the subscription, claiming authorized possession of the cell phone handset, and reconfirming the user's agreement to the transaction and its terms."  *Id.* ¶ 26.  Minutes later, a user at the ***same*** IP address, using the ***same*** browser, entered Ms. Geier's personal information.  *Id.* ¶ 18.

Geier's counsel call this Declaration "either grossly misleading or downright false." Mot. 30:1-2.  But the ***evidence*** does not match the inflammatory rhetoric.  Geier admits the IP

---

[6] Constrained by the 160 character limit governing text messages, the message to Ms. Geier's phone said this: "Enter PIN 5935 on mobilebidnwin.com 20bids/day Txt HELP 4help 8002357105$9.99/mth Msg&Data Rates May Aply."  Geier complains because industry best practices recommended having the price term precede the PIN number, so the message supposedly should have read:  "Mobilebidnwin.com 20bids/day $9.99/mth Enter PIN 5935 Txt HELP 4help 8002357105 Msg&Data Rates May Aply."  See Mot. 30:17-20.  But Ms. Geier does ***not*** claim this alleged shortcoming in the text message deceived her into subscribing.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 16

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

address in Pow! Mobile's records matches the IP address in his home.  Prince Decl, Ex. 38

(admitting IP address 98.232.155.120).  He does not deny he uses Comcast as his ISP.  He

admits he lives in Longview.  He admits Pow! Mobile's records have the right phone number

and address for his wife.  The records Geier subpoenaed from AT&T prove Ms. Geier's phone

received text messages at **exactly** the times Pow! Mobile says they were sent.  *Compare* Supp.

Rummage Decl. [Dkt. 29] ¶ 3 & Ex. A (confirming Ms. Geier received text messages from

Pow!'s short code 26235 on her phone at 11:58 a.m. PST, and then again at 12:02 p.m. PST on

January 1, 2012) *with* Cacciato Decl. [Dkt. 17] ¶¶ 24, 27.  And Mobile Messenger's records

corroborate the details in the Pow! Mobile declaration.  *See* Supp. Pajaczkowski Decl. [Dkt. 30]

¶¶ 5-6.  Undisputed contemporaneous (and individualized) evidence from independent sources,

including admissions by Geier and his wife, supports every detail establishing assent.

Further, Geier admits the landing page submitted in Pow! Mobile's declaration was

"fully compliant"; he argues only that "Mobile Messenger is unable to identify the ***actual***

landing page through which any consumer was enrolled, including the Geiers."  Mot. 30:6-9

(citing testimony from Mobile Messenger 30(b)(6) witness) (emphasis added).  But Mobile

Messenger's inability to track the landing page is precisely why Pow! Mobile provided the

evidence of the landing page through which Ms. Geier enrolled.  When Geier's lawyer tested

Pow! Mobile's CEO in deposition, he explained that "[e]very ad that we serve has a unique

identifier, and that identifier is recorded," i.e., it is "embed[ded] in the ad when [Pow!]

provide[s] it to the advertiser."  Cacciato Dep. 163:20-24 (Prince Decl., Ex. 3).  Based on these

identifying codes, Pow! Mobile's CEO testified that he asked the company's Chief Technical

Officer to locate the ad served to Ms. Geier; the ad was then located and sent to Mobile

Messenger. *Id*. 163:6-12; 164:6-16.  Thus, the only ***evidence*** shows Ms. Geier enrolled after

seeing a landing page her husband labels as "fully compliant."[7]

---

[7] Although Geier denies his wife enrolled, he claims that *if* she did, it must have been in conjunction with "a stacked marketing flow." Mot. 30:20-24.  But again, the evidence negates the assertion.  Geier apparently relies on the CTIA's definition of "stacked marketing," i.e., "cross-selling of several PSMS promotions from the same or different sponsors, sometimes on multiple different shortcodes, within the same online user flow, whereby a user is shown a series of offers in close succession, often with his or her mobile phone number pre-populated in

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 17

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

Ms. Geier never claimed she was duped into entering a PIN and her personal information in response to a misleading landing page or PIN message, as her husband's brief implies.  To the contrary, she flatly denies she "*ever* entered a [PIN] number that [she] received by text message on a page on [her] computer.  M. Geier Dep. 31:11-14 (Prince Decl., Ex. 5) (emphasis added).  In fact, she claims that if she *had* entered a phone number on a web-based submit page, she would have entered her landline "home phone number."  *Id*. 31:18-22.  Thus, Ms. Geier does *not* claim an ad or PIN message deceived her into enrolling; rather, she claims the charges appeared on her bill without *any* prior action on her part.  When asked to explain how these charges came to be on her bill, Ms. Geier refused to hypothesize, claiming she had no explanation other than what she had discussed with her husband and her husband's lawyers.  *Id*. 50:24-51:24.  At this point, then, Geier relies not on a claim of deceptive advertising or confusing text messages sent to Ms. Geier; instead, he relies purely on an unsupported claim that charges appeared on his phone bill without his wife taking any action to authorize them.[8]

In any event, Geier has failed to share with the Court the fact that, before he sued, Geier received a *full refund* (and more) for all PSMS charges—including charges unrelated to Mobile Messenger or Pow! Mobile.  In early March 2012, Geier discovered charges for three PSMS subscriptions on his phone bill—one for Pow! Mobile (labeled "WebDirect") and two others from different content providers (and different aggregators).  *See* Prince Decl., Ex. 3 at 000095.  Upon looking at his bills, Geier discovered they included charges in January and February for the same three subscriptions, set forth prominently in separate sections of the bills.  *See* R. Geier Dep. 41:22-42:8 (Prince Decl., Ex. 1) & Prince. Decl., Ex. 12 (at 000056) & Ex. 13 (at 000028).  He called AT&T, his cell phone provider, which "credited [him] for two

---

subsequent pages."  *See* Marshall Decl. [Dkt. 79] at 345, Ex. 24 at 5 (CTIA Compliance Monitoring and Enforcement Playbook).  But the record shows Ms. Geier entered her personally identifying information on a lead generation form, *not* in conjunction with multiple PSMS offerings.  *See id.*, Ex. 2, 180:3-21 (Cacciato Dep.).

[8] Geier claims "an analysis of the Geiers' computer devices confirmed that [they] never visited Mobile Messenger's websites."  Mot. 30:25-26.  In support, Geier relies on a statement from his lawyer, *see* Marshall Dec. [Dkt. 83-1] ¶ 10, which is both hearsay and an opinion from a person not qualified to give it.  In fact, the forensic analysis of the Geiers' devices does not rule out the possibility that they signed up precisely as Pow! Mobile explained.  Goodman Decl. ¶ 5.  Further, while Ms. Geier denied any interest in any sort of online bidding website, the forensic analysis of her devices showed she visited sites of that nature.  *Id.* ¶ 6.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 18

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1 months" but "said they could not go back for three months."  R. Geier Dep. 42:14-15 (Prince

2 Decl., Ex. 1).  But when Geier received his next bill (showing a due date of April 26, 2012), it

3 showed the promised credit for two months of PSMS subscriptions ($62.22), as well as

4 *additional* credits of $41.39 for a free month of service on his and his wife's lines ($9.99

5 apiece, plus fees and taxes) and a $18.75 credit for the "data bundle" on Geier's phone, for a

6 total credit of $103.61—about $10.00 more than the ***total*** AT&T had charged Geier for the

7 three PSMS subscriptions over three months.  *Id.* 47:24-48:4; Prince Decl., Ex. 14 (at 13).  The

8 credits were plainly adjustments for his PSMS complaint:  Geier admitted he called AT&T

9 seeking adjustments ***only*** for the allegedly unauthorized PSMS subscriptions, and he offered no

10 other explanation for the credits.  R. Geier Dep. 47:14-23; 48:5-9 (Prince Decl., Ex. 1).

11 But despite being fully compensated, Geier was not finished.  Despite recouping more

12 than AT&T had charged him, Geier wrote the Attorney General and his legislator, who referred

13 his inquiry to the Attorney General.  *Id.* 59:24-60:6.  In response, AT&T contacted Geier again

14 on April 27, 2012—and "provisioned an $80 adjustment to Mr. Geier's account for the

15 inconvenience."  Prince Decl, Ex. 15 (at 00004).  Geier admitted AT&T applied its $80.00

16 adjustment as a result of the PSMS issues, R. Geier Dep. 62:7-17 (Prince Decl., Ex. 1), "in

17 addition to the credits that [he] had received previously."  *Id.* 63:19-21.

18 Geier pronounced himself "satisfied with the $80 adjustment for my inconvenience," *id.*

19 63:17-18, which brought his credits by the end of April 2012 to a total of $183.61—as

20 compared to the $92.19 in total PSMS charges AT&T billed between January and March 2012,

21 only about $30 of which was attributable to Mobile Messenger.  Prince Decl., Ex. 12 (at

22 000056), Ex. 13 (at 000028), Ex. 11 (at 000095).  Despite having been fully compensated for

23 his PSMS charges, and despite AT&T "successfully" adding a "purchase blocker … to [his]

24 account" to prevent future charges, *id.*, Ex. 15 (at 00004), Geier contacted a lawyer and sued

25 Mobile Messenger on October 17, 2012.

26 ### III.   ARGUMENT

27 "The class action is an exception to the usual rule that litigation is conducted by and on

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 19

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

behalf of the individual named parties only.  To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citation and quotation marks omitted).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification … must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The Rule does not "establish an entitlement to class proceedings for the vindication of statutory rights"; instead, it "imposes stringent requirements for certification that in practice ***exclude most claims***." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309-10 (2013) (emphasis added).

Further, the Court must conduct a "rigorous analysis" of Rule 23's prerequisites before deciding whether to certify a class.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped." *Dukes*, 131 S. Ct. at 2551; *see Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (same).  The Court must look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the class certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996); *LaCasse v. Wash. Mut., Inc.*, 198 F. Supp. 2d 1255, 1260-61 (W.D. Wash. 2002) (Zilly, J.).

Geier "bears the burden of demonstrating that []he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  "If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused." *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 632 (W.D. Wash. 2011).  Geier claims to meet the 23(a) requirements and seeks certification of two classes, i.e., one "for liability and injunctive relief" under Rule 23(b)(2), and a second "class for monetary relief" under Rule 23(b)(3).  Mr. Geier cannot do so.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 20

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

A.   **Geier Cannot Establish Rule 23(a)'s Requirements.**

1.   **Geier Has Alleged Numerosity, but Only by Defining a Hopelessly Overbroad Class.**

Under Rule 23(a)(1), Mr. Geier must show his proposed class "is so numerous that joinder of all members is impracticable." Numerosity "must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005) (quotation omitted). A proposed class representative cannot satisfy this requirement by asserting the class ***must*** be numerous because the defendant is a large business. The problem with a "numerosity-by-assumption approach is that it makes any corporation with a large number of customers vulnerable to a class action," without evidence that common conduct affected a large number of people. *Boucher v. First Am. Title Ins. Co.*, 2011 WL 1655598, at *7 (W.D. Wash. May 2, 2011); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 550 (N.D. Cal. 2007).

Mobile Messenger agrees the class as defined includes a sufficient number of members to satisfy traditional numerosity tests—but ***only*** because Geier has chosen to include in his proposed class PSMS customers who have no possible claim, i.e., people who were not deceived and received exactly what they ordered, or who received a refund for everything they paid, as Geier did. Had Geier ***not*** included these customers in his class, he could not have satisfied Rule 23(a)'s numerosity requirement. *See Fields v. Mobile Messenger Am., Inc.*, 2013 WL 6073426, at *5 (N.D. Cal. Nov. 18, 2013) (denying certification of California subclass because plaintiffs did "not take into account the substantial amount of refunds issued to customers" and made no showing as to how many non-refunded "putative class members resided in California at the time of their enrollment in the [PSMS] service").

2.   **Geier Cannot Establish Commonality Because He Cannot Identify a Common Wrongful Act Allegedly Affecting the Class as a Whole.**

In assessing commonality under Rule 23(a)(2), "[w]hat matters ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (alterations and internal quotation marks omitted). Thus, in a case involving an alleged statutory violation, such as the CPA claim here, "[i]t is not enough to allege that defendant

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 21

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

violated the same statute" as to all class members, since statutes "can be violated in many ways based on any number of allegedly wrongful acts that could cause unrelated injuries." *Helde v. Knight Transp., Inc.*, 2013 U.S. Dist. LEXIS 147006, at *6-7 (W.D. Wash. Oct. 9, 2013). Instead, the commonality requirement demands that plaintiffs show "class members have suffered the same type of injury arising from a ***common wrongful act***." *Id.* (emphasis added). And the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Geier falls far short of presenting common issues of the sort the Supreme Court required in *Dukes* and Judge Lasnik described in *Helde*. Rather than offer the Court a "common wrongful act" that cuts across the class as a whole, Geier points to "many ways" (more accurately phrased as many ***different*** ways) in which ***some*** people might have been injured by allegedly unfair or deceptive practices, some of which may have affected some class members but not others—and in some cases did not affect even Ms. Geier herself. For example, Geier claims a common issue as to whether Mobile Messenger "enroll[ed] consumers through unfair and deceptive landing pages." Mot. 36:10-11. But Geier does not contend ***all*** customers had the common experience of enrolling through unfair and deceptive landing pages—nor could he: Geier's own evidence shows that (for example) 75% of PSMS marketing reviewed in January 2012 complied with industry guidelines. Marshall Decl. [Dkt. 83-1] at 214, Ex. 17. Thus, resolving the supposedly "common" issue of unfair and deceptive landing pages (and leaving aside the variations among those landing pages) would not be "apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551. To the contrary, it would simply indicate whether ***some*** members of the proposed class were exposed to deceptive landing pages before enrolling.

The same analysis applies to other issues Geier identifies as supposedly "common." For example, he claims a "common" issue as to whether Mobile Messenger sent "unfair and deceptive text messages to consumers during the enrollment process." Mot. at 36:11-13. But even if Geier established Mobile Messenger sent text messages deviating from MMA

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 22

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

guidelines (which is what Geier means when he labels them "deceptive"), it would not be apt to drive the resolution of the litigation.  In particular, Ms. Geier insists she did ***not*** see a text message at all during the PSMS enrollment process, so it makes no difference to her claim whether Mobile Messenger sent text messages that fell short of MMA guidelines.  *See* M. Geier Dep. 29:4-25 (Prince Decl., Ex 5) (Ms. Geier never viewed any text other than two welcome messages from AT&T).  Further, Geier admits Mobile Messenger had a ***policy*** of sending text messages during enrollment that complied fully with industry guidelines.  Mot. at 19:8-9 (citing Ex. 1 at 167:14-16; Ex. 52); *see* Marshall Decl. [Dkt. 79], Ex. 24 at 12 (Mobile Messenger compliance requirement).  Geier therefore relies on an argument that "Mobile Messenger ***allowed partners to change*** the PIN message once a short code was launched."  Mot. at 19:10-11 (emphasis added).  In other words, while Mobile Messenger policy required compliant messages, Geier claims it had a "common" (and supposedly deceptive) practice of looking the other way while some (***not*** all) content providers modified their messages.

Geier's argument on text messages and advertising closely resembles the commonality argument the Supreme Court soundly rejected in *Dukes*.  In *Dukes*, plaintiffs admitted WalMart had a corporate anti-discrimination policy (similar to Mobile Messenger's policies for MMA-compliant advertising and text messages) but claimed WalMart had a "'policy' of allowing discretion by local supervisors over employment matters," which allegedly led to classwide discrimination (just as Mobile Messenger supposedly had a "policy" of "allow[ing] partners to change the PIN message" and manage advertising).  *Dukes*, 131 S. Ct. at 2554.  The Supreme Court rejected commonality:  "[T]hat is just the opposite of a uniform … practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices."  *Id*.  The same is true here:  by claiming Mobile Messenger allowed content providers to change PIN messages, Geier concedes his case requires examining the conduct of scores of content providers to determine exactly what PIN messages they sent and measuring each against legal standards—destroying commonality, just as in *Dukes*.

Geier also claims a common issue relating to allegedly deceptive "billing descriptors."

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 23

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   Mot. at 36:16-17.  But that theory has similar problems.  Carriers (not Mobile Messenger)

2   decide what to put on their bills.  Machock Decl. ¶ 10.  In arguing Mobile Messenger had

3   responsibility for billing descriptors, Geier cites Exhibit 105, Mot. 25:8-10, an AT&T guide for

4   partners describing how that carrier itself complied with the FCC's Truth in Billing Rules for

5   customer billing.  The passage Geier cites advises AT&T's bills will no longer show the

6   aggregator's name in the billing description; instead, to "clarify the end customer's bill,"

7   AT&T would collect and display the "Merchant Name: a string representing the name of the

8   AT&T partner selling the product"; "Short Code: The SMS short code for the product being

9   purchased"; and "Campaign Id: The AT&T assigned campaign ID for the product being

10  purchased."  Marshall Decl. [Dkt. 83-8], Ex. 105 at 31.  Nothing in Exhibit 105, or anything in

11  the record, suggests Mobile Messenger had responsibility for what the carriers chose to put on

12  their bills.  Geier's argument on "billing descriptors" thus speaks to alleged shortcomings in

13  different carriers' conduct; it presents no ***common*** issue for Mobile Messenger.

14       Geier's other so-called "common" issues fare no better.  For example, he asserts an

15  intent to litigate the common issues of whether Mobile Messenger "manipulate[ed] refund

16  rates" and "circumvent[ted] short code suspensions and terminations" to enable it to "continue

17  enrolling consumers."  Mot. 36:13-16.  But neither issue is "apt to drive the resolution of the

18  litigation."  *Dukes*, 131 S. Ct. at 2551.  Even if Mobile Messenger engaged in the accused

19  conduct to keep the PSMS business alive (which it did not), a class member would have a claim

20  ***only*** if she was deceived into buying a PSMS product she did not want; if the class member

21  ***intended*** to enroll in the PSMS subscription, the alleged manipulation of refund rates (or

22  circumvention of suspensions) makes no legal difference.  For that reason (among others), it is

23  flatly untrue to claim, as Geier does, that "for each common practice there is only one answer

24  as to whether Mobile Messenger's course of conduct caused substantial injury to average

25  consumers."  Mot. 36:21-23.  In fact, the answer as to whether the challenged conduct injured

26  any particular class member will vary from customer to customer, depending on what they saw,

27  what they understood, and what they intended when they enrolled.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 24

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

Finally, Geier asserts a so-called common issue in Mobile Messenger's invocation of the "double opt-in" process as a defense to consumer complaints. Mot. at 36:17-18. But Geier never explains what aspect of the supposedly common double opt-in issue would help drive the case to a conclusion. The industry guidelines on which Geier relies make clear that "[p]remium rate [i.e., PSMS] programs *require* double opt-in." Marshall Decl. [Dkt. 79], Ex. 20 § 2.5-1 at eMQ002658-0023 (Mobile Marketing Ass'n, "U.S. Consumer Best Practices for Messaging") (emphasis added). Geier's criticism of Mobile Messenger's use of the double opt-in process thus relates not to the use of the process to secure user consent—but to the invocation of the double opt-in as a defense to individual claims by users who assert they never authorized the PSMS charge. That being the case, the issue does not cut across the class as a whole but instead affects only those who did not in fact authorize charges. As the MMA recognizes (and not even Geier denies), a properly implemented double opt-in process ensures subscribers "positively acknowledge the acceptance of a premium charge before premium charges are applied to their account." *Id.* 20 § 2.5-2. The fact that Mobile Messenger implemented the process and individual consumers still alleged the charges to be unauthorized falls far short of establishing a common contention "of such a nature that it is capable of classwide resolution," so "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Geier has not satisfied Rule 23(a)(2)'s commonality requirement.

> **3.  Geier Is Not Typical Because He Received a Full Refund, His Wife Did Not Have the Same Experience as the Class, and They Enrolled in a Different Product Than Other Class Members.**

Rule 23(a)(3)'s typicality requirement ensures capable representatives protect the interests of absent class members. *Hanon*, 976 F.2d at 508. "'The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.' Where the premise does not hold true, class treatment is inappropriate." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 412 (C.D. Cal. 2000) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)). "If proof of the representatives' claims

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 25

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  would not necessarily prove all the proposed class members' claims, the representatives' claims

2  are not typical of the proposed members' claims." *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D.

3  54, 58 (S.D. Fla. 1990).  Geier fails the typicality requirement, for three reasons.

4      ***First***, Geier is subject to individual defenses because (a) he received refunds and credits

5  for his PSMS charges in an amount almost double what appeared on his bills, and (b) he faces

6  the individual defense that, based on the available evidence, his wife consented to and

7  authorized the PSMS charge at issue.  *See* Section II.G, *supra* (describing Ms. Geier's

8  transaction).  Under settled law, a putative class representative's claims are not typical if he or

9  she is subject to unique defenses that threaten to become the focus of the case.  *See, e.g.*,

10  *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 215 (N.D. Cal. 2012).

11      ***Second***, Geier's wife does not claim to have had the same PSMS purchase experience

12  that he alleges most of the class experienced.  Geier has larded the record with hundreds of

13  PSMS landing pages and advertisements—many unrelated to the "white label" programs that

14  define his proposed class, including even documents related to non-premium SMS, standard

15  messaging programs.  He claims those pages deceptively induced unwitting subscribers to enter

16  their cell phone numbers on web pages, retrieve PINs from their phones, and then enter the PIN

17  on the web page, thereby enrolling in unwanted services.  But Ms. Geier claims something

18  ***entirely different*** from what Geier claims on behalf of absent class members:  she denies she

19  "ever entered a pin number that [she] received by text message on a page on [her] computer";

20  indeed, she swears that if she ***had*** entered a phone number on a submit page, it would have

21  been her landline "home phone number."  M. Geier Dep. 31:11-22 (Prince Decl., Ex. 5).

22      Because of the wide gulf between Ms. Geier's experience and the experience of those

23  for whom her husband wants to litigate, this case resembles *Berger v. Home Depot USA, Inc.*,

24  741 F.3d 1061 (9th Cir. 2014), where plaintiff sought certification of claims arising out of a

25  damage waiver in Home Depot's tool rental agreement.  Because different versions of the

26  agreement "discussed the damage waiver in a different way," plaintiff sought certification of

27  different subclasses for each version.  But because plaintiff had a transaction under only ***one***

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 26

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

1   version, he was "not a member" of the other two subclasses and "cannot prosecute claims on

2   their behalf." *Id.* at 1066-67.  *See Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000,

3   1005 (9th Cir. 1981) (rejecting subclasses where representatives not members); *Murray v.*

4   *Sears, Roebuck & Co.*, 2014 U.S. Dist. LEXIS 18082, at *31-32 (N.D. Cal. Feb. 12, 2014)

5   (plaintiff failed to satisfy typicality where his purchase experience differed from absent class

6   members).  Geier likewise "cannot prosecute claims on … behalf" of absent class members

7   who allegedly saw deceptive ads that prompted them to enter their cell phone number on a web

8   page and then, in turn, enter a PIN send to their mobile phone by SMS—because his wife flatly

9   denies she had that experience.  Geier ***cannot*** prove the class claim through testimony as to his

10  wife's transaction, and that means his claim does not typify the class claims.

11          ***Third***, Ms. Geier did not buy, and Geier was not billed for, the same product as other

12  class members.  She subscribed to the "mobilebidnwin" reverse auction game; other members

13  of the proposed class subscribed to different services, offered by different content providers and

14  marketed by different publisher networks.  Mot. 4:2-6.  Geier understands he has no basis to

15  represent class members who purchased a different PSMS product than his wife did:  Geier's

16  testimony distinguished between service providers such as Pow! and aggregators, R. Geier

17  Dep. 34:8-19 (Prince Decl., Ex. 1), and then denied he is "trying to represent people who had

18  charges for service providers other than the one that charged" him.  *Id.* 34:22-24.

19          Geier has it right.  "[D]istrict courts have held that the typicality requirement has not

20  been met where the named plaintiff … purchased a different product than that purchased by

21  unnamed plaintiffs." *Major v. Ocean Spray Cranberries, Inc.*, 2013 U.S. Dist. LEXIS 81394,

22  at *10 (N.D. Cal. June 10, 2013) (quoting *Wiener v. Dannon Co.*, 255 F.R.D. 658, 666 (C.D.

23  Cal. 2009)).  Even if Geier proves unfair and deceptive practices caused his wife to enroll in the

24  reverse auction game marketed by Pow! Mobile, which eventually led to charges appearing on

25  his AT&T bill, he will not prove ***anything*** about (for example) a claim on behalf of a class

26  member who enrolled in a white label program offering different content—such as retail

27  coupons—offered by a content provider other than Pow!, in response to different marketing,

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 27

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

leading to charges on a carrier's bill other than AT&T.  It is not true that "as goes the claim of [Geier], so go the claims of the class."  *O'Connor*, 197 F.R.D. at 412.

### 4.   Geier Is Not an Adequate Class Representative.

Under Rule 23(a)(4), a class representative must prove he "will fairly and adequately protect the interests of the class."  To determine whether Geier satisfies this prerequisite to class certification, the Court must "resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks omitted).[9] The adequacy requirement demands *shared interests* between the representatives and the absentees, not just an empty promise from the proposed representative to advocate for the class. *Id.  See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006) ("[P]laintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim.").

Geier fails the "shared interests" aspect of the adequacy test, as the Ninth Circuit articulated it in *Ellis*.  In that case, two former employees sought both injunctive relief and damages for Costco's alleged gender discrimination in promotion practices.  The Ninth Circuit held the former employees *could* be adequate representatives of a class seeking damages—but could *not* adequately represent a class including current employees seeking injunctive relief, as the former employees "do not have standing to seek injunctive relief."  *Ellis*, 657 F.3d at 986. The "former employees … would not share an interest with class members whose primary goal is to obtain injunctive relief."  *Id.*  Here, Geier is not an adequate representative for the same reason the former employees failed the adequacy test in *Ellis*.  Geier admitted in his deposition that he is *not* "looking for a further refund," R. Geier Dep. 32:20-23 (Prince Decl., Ex. 1),

---

[9] There is "considerable overlap" between Rule 23(a)'s typicality and adequacy requirements.  *Murray*, 2014 U.S. Dist. LEXIS 18082, at * 32-33.  Where "the class representative's claims are not typical of the class, the representative cannot adequately protect the interests of the absent class members."  *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 628 (D. Kan. 1996).  Accordingly, Mobile Messenger will not repeat its arguments concerning typicality, to the extent they overlap with adequacy.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 28

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

because, before bringing this lawsuit, he received credits from AT&T **substantially** exceeding what AT&T billed him for PSMS subscriptions.  To paraphrase the Ninth Circuit in *Ellis*, as a fully-refunded consumer who is **not** "looking for a further refund," *id.* 32:20-23, Geier "would not share an interest with class members whose primary goal is to obtain [monetary] relief." *Ellis*, 657 F.3d at 986.  It makes no difference that Geier finds Mobile Messenger's business model "flawed," R. Geier Dep. 32:24-33:5 (Prince Decl., Ex. 1), any more than it mattered that the former employees in *Ellis* objected to Costco's ongoing promotions practices.

That fact alone disposes of Geier's assertions of adequacy.  But the Court should find him inadequate for another reason.  At about the same time Geier sued Mobile Messenger in this action, he also sued a different aggregator, Motricity, in King County Superior Court, asserting claims revolving around the other two PSMS subscriptions Ms. Geier entered into on January 1, 2012.  The Complaint against Motricity was a near-verbatim copy of the Complaint in this action, even down to the allegations that Geier received charges in the same amounts during the same months for his wife's line of service.  *See* Rummage Decl. [Dkt. 19], ¶ 2 & Ex. A (complaint in *Geier v. Motricity, Inc.*, No. 13-2-02290-7 (King Co. Sup. Ct.)).  Geier brought the *Motricity* case as a class action and understood he was "acting as a class representative."  R. Geier Dep. 85:2-15; 92:9-18 (Prince Decl., Ex. 1).  According to Geier, Motricity and Mobile Messenger "[p]retty much seem the same to me," and he had no understanding as to any differences in "how the two companies handle the double opt-in process."[10]  *Id.* 89:1-5.

Despite believing Motricity and Mobile Messenger were "pretty much the same," Geier took money individually from Motricity in exchange for dismissing his claims for the Motricity class—which likely included members of the proposed class here.  Geier admitted he and his lawyers received cash for the Motricity settlement, but would not reveal the amount.  R. Geier Dep. 91:1-17 (Prince Decl., Ex. 1); Prince Decl. Ex. 16 (Motricity agreement).  The class Geier

---

[10] Unlike Mobile Messenger, Motricity did not administer a double opt-in system for its providers.  Instead, like other aggregators, Motricity deferred to the content providers to administer the double opt-in recommended by the MMA.  Mobile Messenger believes the evidence would show its consumer protection measures vastly exceeded Motricity's, including not only the double opt-in process but also a wide variety of technical measures Mobile Messenger adopted to combat fraud.  Machock Decl. ¶¶ 11, 12.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 29

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

sought to represent in Motricity, however, received "[n]othing." R. Geier Dep. 92:15-18. In fact, Geier did not even obtain promises from Motricity restraining its future conduct. *Id.* 95:11-16. When asked why he parlayed his class action complaint against Motricity into a settlement that paid him and his lawyers cash but obtained "[n]othing" for the class, Geier refused to answer, invoking the attorney-client privilege. *Id.* 91:21-92:4; 95:3-10. *See also id.* 94:15-95:2 (acknowledging lawyers received more than Geier through Motricity settlement).

Geier's testimony offers no reason to believe he will act in the best interests of the class, as distinct from furthering his self-interest. That fact, combined with his lack of interest in refunds, the only relief that could benefit the class, makes him fail the adequacy test.[11]

### B.    Geier Cannot Satisfy Rule 23(b)(2)'s Requirements for a Class to Pursue Injunctive or Declaratory Relief.

Because Geier satisfies *only* the numerosity requirement of Rule 23(a), this Court need not reach Rule 23(b). But even if the Court were to find Geier met all the Rule 23(a) prerequisites to class certification, it should find his proposed class falls short under Rule 23(b).

Geier first asks the Court to certify his claims for class treatment under Rule 23(b)(2), which allows certification of a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Supreme Court has now clarified that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557. *See also Zinser*, 253 F.3d at 1193. Rather, as this Court explained more than a decade ago, Rule 23(b)(2) certification "'is appropriate only where the primary relief sought is declaratory

---

[11] Geier's conduct in connection with other litigation against Mobile Messenger raises additional concerns. In Nebraska, Geier attacked settlements that would have offered refunds to Mobile Messenger customers across the country who claimed to have incurred an unauthorized PSMS charge. *See* Praecipe to Attach Documents [Dkt. 87-3], Exs. 147 & 148 (proposed settlement agreements in *Cullan & Cullan*). Geier objected to the settlements before notice went to the class, largely because of provisions capping claims under the federal Telephone Consumer Protection Act ("TCPA"). But Geier does not even assert a TCPA claim, and the Nebraska deals would have given *every* member of his proposed class in this case the opportunity to recover *every* unauthorized PSMS charge. Geier's Nebraska objections thus prevented class members from getting the relief he seeks here. Fortunately, as noted below, class members now appear to have other avenues of relief through carrier refund programs.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 30

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

or injunctive,' and when monetary damages are 'merely incidental.'" *Duncan v. Nw. Airlines, Inc.*, 203 F.R.D. 601, 610-11 (W.D. Wash. 2001) (Zilly, J.) (denying certification) (citations omitted). "[W]hether the monetary relief is understood as legal damages or an equitable remedy is irrelevant to this analysis." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 541 (N.D. Cal. 2012) (citing *Dukes*).

### 1.    Geier Seeks Primarily Monetary Relief, Making 23(b)(2) Certification Inappropriate under *Dukes*.

Even though he has been fully refunded, Geier seeks primarily money on behalf of the proposed class.  In his First Amended Complaint [Dkt. 13], Geier alleges a violation of the CPA, as well as common law claims for conversion and unjust enrichment.  The CPA claim alleges that "[b]ut for Defendants' unfair and deceptive acts or practices, Plaintiff Geier and members of the Class ***would not have been billed for and would not have paid the charges*** related to Defendants' scheme." FAC ¶ 6.7 (emphasis added).  In the conversion claim, Geier alleges Mobile Messenger took money from Geier and the class:  "These funds are properly owned by Plaintiff and Class members, not Defendants, which now claim that they are entitled to ownership of the funds, contrary to the rights of Plaintiff and Class members."[12]  FAC ¶ 7.6.  And in the unjust enrichment claim, Geier asserts "Defendants received a benefit in the form of fees from Plaintiff and Class members because of Defendants' policies and practices."  FAC ¶ 8.2.  Consistent with these allegations, Geier prays for monetary relief, i.e., a judgment "that Class members are entitled to an amount equal to all payments received" by Mobile Messenger, as well as "[a]n award of exemplary damages, jointly and severally, in the amount of three times the value of each payment made by a Class member."  FAC, Prayer, ¶¶ B, C.  Geier also asks for injunctive relief, but primarily to facilitate the recovery of ***more*** money, i.e., "to notify Class members of the availability of refunds from wireless service providers."  *Id*. ¶ E.

Although Geier asks for an injunction against "activities that violate 19.86[.090] RCW,"

---

[12] As Geier knows, he paid his money to AT&T—not Mobile Messenger.  After AT&T retained its share of the fee from Geier's account, it forwarded the balance to Mobile Messenger, which in turn paid Pow! Mobile.  Thus, Geier knows full well Mobile Messenger did not collect or retain his monthly fee, as he alleges.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 31

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*id.* ¶ D, the request "essentially amounts to a request for an order directing [Mobile Messenger] to comply generally with existing [law]—an obligation that would exist even in the absence of an injunction." *Murray*, 2014 U.S. Dist. LEXIS 18082, at *34.  It cannot support class certification under Rule 23(b)(2).  "If anything, it appears … Plaintiff's claim for injunctive relief is incidental to his claim for damages."  *Diacakis v. Comcast Corp.*, 2013 U.S. Dist. LEXIS 64523, at *29-30 (N.D. Cal. May 3, 2013) (denying Rule 23(b)(2) class certification where, *inter alia*, case management statement focused on monetary relief).  Under *Dukes*, the Court should not certify a class to pursue these primarily monetary remedies.

### 2. Because Mobile Messenger No Longer Handles PSMS Subscriptions, Certification under Rule 23(b)(2) Would Be Improper.

The cessation of PSMS activity provides another compelling reason to deny Rule 23(b)(2) certification.  Rule 23(b)(2) exists to provide a vehicle for class wide redress for *ongoing* practices that, without judicial intervention, would continue to affect class members uniformly and adversely.  The drafters designed the Rule "for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons."  *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994) (applying 23(b)(2) to systemic failure of child welfare services).  *See* Fed. R. Civ. P. 23(b)(2) advisory committee's note, 39 F.R.D. 69, 102 (1966).  But to pursue claims under Rule 23(b)(2), a representative plaintiff must have a real prospect of being exposed in the future to the practice sought to be enjoined:  a plaintiff must prove "a real and immediate threat that he would again" suffer injury to have standing for prospective equitable relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  When a proposed representative plaintiff no longer is subjected to the challenged practice, courts *cannot* certify a Rule 23(b)(2) class.  *E.g.*, *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 540 (S.D. Cal. 2011) (declining to certify 23(b)(2) class on warranty plans where plaintiffs' plans expired).

For example, in *Davis v. Homecomings Financial*, 2007 WL 1600809 (W.D. Wash. June 1, 2007), the defendant lender charged the plaintiff borrower an "expedite fee" when she paid off her mortgage loan.  The borrower sued, seeking declaratory and injunctive relief as to

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

the legality of the fee.  Although Judge Lasnik certified a class under Rule 23(b)(2), he later

granted the lender's motion for summary judgment dismissing the injunctive and declaratory

relief claims—and decertified the Rule 23(b)(2) class.  "A plaintiff must demonstrate 'a real

and immediate threat that he would again' suffer the injury to have standing for prospective

equitable relief."  *Id*. at *2 (quoting *Lyons*, 461 U.S. at 105).  Because plaintiff had ***no ongoing***

***relationship*** with the lender, the Court concluded she faced no risk the lender would repeat the

challenged conduct:  the lender could harm plaintiff in the same way ***only*** if she took out

another secured loan with the lender, the lender conditioned release of the property on payment

of the challenged fee, and she had a deed of trust with language arguably prohibiting the fee.

*Id*.  "Standing cannot be established based on 'an extended chain of highly speculative

contingencies' as is the case here."  *Id*. (quoting *Nelsen v. King Cnty.*, 895 F.2d 1248, 1252 (9th

Cir. 1990)).  "'Unless the named plaintiffs are themselves entitled to seek injunctive relief, they

may not represent a class seeking that relief.'"  *Id*. at *4 (citation omitted).  *See also Forcellati

v. Hyland's, Inc.*, 2014 U.S. Dist. LEXIS 50600, at *37-38 (C.D. Cal. Apr. 9, 2014) (declining

to certify 23(b)(2) class where no "realistic threat exists" that plaintiffs would "re-purchase

cold and flu products that they consider to be completely worthless and ineffectual").

     Geier (and members of the proposed class) are even less likely to face the Mobile

Messenger conduct of which they complain:  the wireless carriers, as well as Mobile

Messenger, stopped engaging in the PSMS business in November 2013.[13]  Mobile Messenger

has received no revenue from PSMS operations for nearly a year, and it has no intention of re-

engaging in the PSMS business.  Machock Decl. ¶ 2.

     Recognizing the business has gone away, Geier resorts to fanciful speculation with no

basis in reality.  He claims, for example, Mobile Messenger "sought the approval of a federal

court to resume the company's PSMS business model," Mot. 43:6-8, and frets that Mobile

---

[13] *See* Vermont Attorney General press release: http://ago.vermont.gov/focus/news/att-mobility-sprint-and-t-mobile-will-stop-billing-problematic-third-party-charges.php (November 21, 2013) (announcing AT&T, T-Mobile and Sprint would no longer charge customers for premium SMS) (last visited Oct. 19, 2014); *see also* http://allthingsd.com/20131121/att-sprint-t-mobile-verizon-all-dropping-most-premium-text-service-billing-in-effort-to-combat-fraud/ (last visited Oct. 19, 2014).

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 33

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   Messenger may move into the business of direct carrier billing, which supposedly has similar

2   issues, *id.* 43:8-11.  But Geier's assertion that Mobile Messenger sought judicial approval to

3   "resume" the PSMS business is misleading.  Geier cites two proposed settlement agreements in

4   Nebraska—one of which Mobile Messenger signed when it was in the PSMS business.  Mot.

5   43:8.  The provision Geier cites would have required Mobile Messenger to implement

6   additional consumer protections *if* it ever re-entered the PSMS business.  *See* Geier's Praecipe

7   to Attach Documents [Dkt. 87-3], Exs. 147 at 17, 148 at 16.  But Mobile Messenger is not in

8   the PSMS business, no longer has the capacity to engage in that business, and has no plans to

9   resume it.  Machock Decl. ¶¶ 2, 17.  Even if Mobile Messenger had those aspirations, it has no

10  market:  none of the wireless carriers allows PSMS billing.  *Id.*  Nor does Mobile Messenger

11  handle direct carrier billing; nothing in the record suggests it will do so in the future.  *Id.*

12          In these circumstances, a court cannot certify a class under Rule 23(b)(2).  "When the

13  majority of the class does not face future harm, certification under Rule 23(b)(2) is

14  inappropriate."  *Maldonado v. Ochsner Clinic Found.*, 237 F.R.D. 145, 150-51 (E.D. La. 2006)

15  (denying Rule 23(b)(2) certification), *aff'd*, 493 F.3d 521 (5th Cir. 2007).  *See also Schwartz v.*

16  *Avis Rent a Car Sys., LLC*, 2014 U.S. Dist. LEXIS 121322, at *2 n.1 (D.N.J. Aug. 28, 2014)

17  (refusing to consider 23(b)(2) certification where "[d]efendants ceased engaging in the

18  practices complained about").  Geier cites no case to the contrary.  He points to no decision

19  certifying a Rule 23(b)(2) class action where, as here, (a) the named plaintiff has been fully

20  refunded for a disputed charge and (b) the activity that gave rise to the disputed charge has

21  stopped.  The three cases on which Geier relies deal with different circumstances.  In *Z.D. ex*

22  *rel. J.D. v. Grp. Health Coop.*, 2012 WL 5033422, at *9-10 (W.D. Wash. Oct. 17, 2012), Judge

23  Lasnik certified an injunctive relief class to address Group Health's *ongoing* interpretation of

24  coverage for certain conditions.  The state trial court decision in *Laufer v. United States Life*

25  *Insurance Co. in New York City*, 896 A.2d 1101, 1105, 1109 (N.J. Super. Ct. App. Div. 2006),

26  likewise addressed *ongoing* benefits:  the defendant issued notices falsely stating certain

27  policies included a nursing home benefit; the plaintiff sought injunctive relief to inform class

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 34

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  members of the benefits actually available.  And *State v. Ralph William's North West Chrysler*

2  *Plymouth, Inc.*, 87 Wn.2d 298, 312, (1976), was a state-court enforcement action by the State—

3  not a class action—and says nothing about the propriety of a class under federal Rule 23(b)(2).

4       The circumstances offer no reason for this Court to break new ground, especially as the

5  relief Geier seeks would be redundant—and potentially confusing to the proposed class.  Geier

6  points to no reforms to ongoing practices he might accomplish through the vehicle of a Rule

7  23(b)(2) class.  (Since the PSMS business has stopped, reforms would be irrelevant.)  As Geier

8  admits, at least two major carriers have comprehensive refund programs now underway, one of

9  which is under FTC supervision, and both accompanied by notice to affected consumers.  *See*

10  Mot. 42:12-17 & nn. 23, 24; Prince Decl. Exs. 9, 10.  This case does not fit Rule 23(b)(2).

11       **C.       Geier Cannot Satisfy Rule 23(b)(3)'s Requirements of Predominance and**
              **Superiority.**

12       Rule 23(b)(3) applies to damage claims.  Under Rule 23(b)(3), a plaintiff may maintain

13  a damages class action only where "questions of law or fact common to the members of the

14  class ***predominate*** over any questions affecting only individual members" and "a class action is

15  ***superior*** to other available methods for fair and efficient adjudication of the controversy."  Fed.

16  R. Civ. P. 23(b)(3) (emphasis added).  Geier cannot satisfy either requirement.

17       **1.       Geier Cannot Show Common Issues Predominate.**

18       The requirement that common issues predominate over individual ones imposes a

19  burden on Geier "even more demanding than Rule 23(a)," which requires only that common

20  issues exist.  *Comcast*, 133 S. Ct. at 1432.  (As noted above, Geier fails the commonality test

21  under Rule 23(a)(2), and the Court need not even reach predominance.)  Under Rule 23(b)(3),

22  the predominance analysis "focuses on 'the relationship between the common and individual

23  issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant

24  adjudication by representation.'"  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th

25  Cir. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing

26  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).  Under Rule 23(b)(3), a court may not

27  certify a class when "determin[ing] causation and damages [requires] many triable individual

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 35

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   issues [to] be presented." *Zinser*, 253 F.3d at 1189.  Thus, common issues do not predominate

2   if "the success or failure of every class member's claim depends on individualized proof."

3   *Boucher v. First Am. Title Ins. Co.*, 2012 WL 3023316, at *4 (W.D. Wash. July 24, 2012).

4        "Considering whether questions of law or fact common to class members predominate

5   begins … with the elements of the underlying causes of action."  *Erica P. John Fund, Inc. v.*

6   *Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).  A court must analyze these elements to

7   "determine which are subject to common proof and which are subject to individualized proof."

8   *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 310-11 (N.D. Cal. 2010),

9   *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 755 n.7 (9th Cir.

10  2012).  Here, Geier seeks damages under the CPA, RCW 19.86.010 et seq., as well as for

11  alleged unjust enrichment and conversion.  *See* FAC [Dkt. 13] ¶ 6.7 (CPA); ¶ 7.6 (conversion);

12  ¶ 8.2 (unjust enrichment); Prayer, ¶¶ B, C (seeking award of "all payments received" by Mobile

13  Messenger, trebled).  To prove a class CPA claim, Geier must show, among other things, that

14  (1) every class member was ***exposed*** to unfair or deceptive conduct that (2) ***caused*** injury and

15  damage to that class member.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,

16  105 Wn.2d 778, 792-93 (1986).  To prove unjust enrichment, Geier must show each class

17  member conferred a benefit on Mobile Messenger "under such circumstances as to make it

18  inequitable for the defendant to retain the benefit without the payment of its value."  *Bailie*

19  *Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60 (1991).  And to prove

20  conversion, Geier must show "the party charged with conversion wrongfully received the

21  money, or … that party had an obligation to return the money to the party claiming it."

22  *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 83 (2001).

23        Each claim requires a class member to show Mobile Messenger did something to ***cause***

24  that class member to lose money, making it legally appropriate for the Court to order Mobile

25  Messenger to repay that class member.  (Geier has no right to recovery under any of these

26  theories, since he was refunded before he sued.)  For a CPA claim, "[a] causal link is required

27  between the unfair or deceptive acts and the injury suffered by the plaintiff."  *Indoor*

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 36

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  *Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 80 (2007); *see also*

2  *Hangman Ridge*, 105 Wn.2d at 793.  "A plaintiff must establish that, but for the defendant's

3  unfair or deceptive practice, the plaintiff would not have suffered an injury."  *Indoor Billboard*,

4  162 Wn.2d at 83.  Similarly, the unjust enrichment and conversion claims require balancing the

5  equities between the class member and the defendant.  "If the inequity is that [defendant]

6  deceived consumers, the trier of fact will need to inquire whether [defendant] actually deceived

7  consumers (an individualized inquiry) to determine whether any benefit conferred on

8  [defendant] was unjust."  *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 559 (W.D. Wash. 2008)

9  (refusing to certify unjust enrichment claim based on allegedly deceptive practices).

10       Geier's proposed class claims fail Rule 23(b)(3)'s predominance requirement because

11  Geier cannot show causation, loss, and damages for the class as a whole, based on class wide

12  proof.  To the contrary, the outcome of each class member's claim will depend on evidence of

13  the advertising that individual class member saw before subscribing to a PSMS service, as well

14  as proof as to the individual class member's authorization of the subscription charge, the

15  manner in which charges were displayed to that class member on phone bills, and the extent to

16  which the class member received refunds for any purchase she wished to repudiate.

17       Perhaps nothing illustrates the predominance of individual issues more starkly than

18  Geier's "Compendium" of 129 individual declarations.  *See* Compendium of Class Member

19  Decls. [Dkt. 84].  The declarations show ***exactly*** why Geier needs individual testimony, not

20  common proof, to litigate his claims.  For one thing, the declarants do not attest to payment of

21  unauthorized charges; they recite only an understanding (presumably through counsel) that

22  Mobile Messenger "listed my cellphone number as one of the numbers on which they placed

23  charges for third-party goods or services," without confirming they owned the number at the

24  time of the charges.  *See, e.g.*, Dkt. 84, Ex. 15 ¶ 5.  Further, they say nothing about what

25  advertising they saw before they subscribed to a PSMS service, nor do they say ***how*** they

26  subscribed (i.e., over the web, through a mobile phone, or by an interactive voice recording).

27  And rather than deny they subscribed, the declarants say they did not authorize charges "[t]o

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 37

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

the best of my recollection."  Dkt. 84, Ex. 15 ¶ 3.  The Compendium even includes declarants

who received *full refunds* from Mobile Messenger and have no basis to complain.  *See* Dkt. 84,

Ex. 16 ¶ 6 ("Mobile Messenger gave me a refund" of charges on Virgin Wireless account).

Before any of these declarants could recover, Mobile Messenger would have the right to

cross-examine them to (a) test their recollection and determine if they subscribed, (b) find out

what advertising they saw before subscribing, (c) find out whether they owned their number at

the time of the charges, and (d) ascertain if they received a refund.  These individual issues

overwhelm any commonality.

### a.   Individual Issues Predominate as to the Advertising Each Class Member Saw before Subscribing.

This case involves a wide variety of advertising for different PSMS products that

different class members (who subscribed to different carriers) saw at different times; it does *not*

involve the sort of "standardized sales pitch" that sometimes can satisfy the predominance

requirement.  *See, e.g.*, *Henry v. Lehman Commercial Paper, Inc.* (*In re First Alliance Mortg.*

*Co.*), 471 F.3d 977, 991 (9th Cir. 2006).

Mobile Messenger offered content providers templates of CTIA-compliant advertising

for its full-service programs—but the content providers were independent businesses and

responsible for the final text of their advertising, as well as their marketing methods, over

which Mobile Messenger had no control.  Machock Decl. ¶¶ 7, 8, 11.  Content providers in turn

contracted with independent third parties, who provided paid advertising for the providers'

PSMS products.  As a result of this structure (manifested in the thousands of pages filed by

Geier), PSMS advertising in the marketplace varied from fully compliant advertising, including

advertising based on the templates provided by Mobile Messenger, to arguably less compliant

advertising that fell short of the consumer best practices embodied in the CTIA and MMA

guidelines.  *Compare* Marshall Decl., Ex. 26 at 749 (MQ001117); at 734 (MQ001102); at 1129

(MQ1379), *with id.*, Ex. 26 at 727.  As Pow! Mobile's CEO explained, content providers used

publishers and ad networks for their campaigns.  "A publisher … would be an individual

website, and a network would be an ad network that we provide our ad to generate

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 38

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

DWT 25097851v8 0097808-000001

subscriptions or serve those ads through their network of publications that belong to that network." Cacciato Dep. 123:14-18 (Prince Decl., Ex. 3). "[A]ll the ads that [Pow!] provided to our [publishers and networks] were the ads that were approved by the CTIA's rules and regulations." *Id.* 219:12-14. But publishers and networks did ***not*** always run the ads content providers furnished. *Id.* 76:15-21; 79:13-16. Once an ad was in the marketplace, the content provider had limited control over how a publisher or network might alter the approved ad content. "[W]e had no idea that ads were run on certain publications until we got an audit, and we found that our ad was run on a publication." *Id.* 136:15-17.

In other words, the evidence shows class members saw a wide variety of advertising— and Geier offers no way to determine which class members saw which advertising, an ***essential*** step in establishing causation under any theory. Courts routinely deny certification in these circumstances. For example, in *Estate of Felts v. Genworth Life Insurance Co.*, 250 F.R.D. 512 (W.D. Wash. 2008), the plaintiff alleged unfair and deceptive marketing of single-premium annuity products offered by Genworth. But while Genworth issued the annuities and provided standardized marketing material to the agents who marketed them (similar to the assistance Mobile Messenger provided to full service content providers), third parties handled the marketing, using various techniques. Judge Jones found predominance lacking:

> [H]undreds of large financial institutions, insurance brokerages, and independent agents … market Genworth [annuities] in hundreds of different ways. Genworth does not control their marketing and sales practices. To the extent that salespeople can rely on Genworth marketing materials if they choose to, there is no evidence regarding how many of them have made that choice. There is also no evidence of what practices, if any, caused injury to class members. Under these circumstances, individualized questions will dominate in this action.

250 F.R.D. at 526. Similarly, in *Kelley* the plaintiff asserted uniform unfair and deceptive conduct in connection with the marketing of "Windows Vista Capable" PCs. But because the evidence showed different class members were exposed to different marketing, Judge Pechman found predominance lacking on a deception-based CPA claim. *Kelley*, 251 F.R.D. at 558.[14]

---

[14] Judge Pechman certified (but later decertified) a class on a different theory, initially giving the *Kelley* plaintiffs leeway to "further develop" a price inflation claim they claimed would avoid individual causation issues, i.e., a theory that deceptive marketing inflated the price of ***all*** products marketed with the Windows Vista Capable

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 39

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   Other judges in this district have reached similar results.  *See Blough v. Shea Homes, Inc.*, 2014

2   U.S. Dist. LEXIS 100600, at *38 (W.D. Wash. July 23, 2014) (Martinez, J.) (individual issues

3   predominated on CPA claim where "there is not even a common answer as to whether

4   Plaintiffs were exposed to the same allegedly deceptive advertising, given the variations in

5   [defendant's] advertising campaigns over time"); *Helde*, 2013 U.S. Dist. LEXIS 147006, at *15

6   (Lasnik, J.) (individual issues predominated because establishing CPA claim "would require

7   testimony from each class member to determine what, if any, advertising he or she saw,

8   whether the advertisement contained a [false] representation … and whether, but for the

9   misrepresentation, each class member would not have suffered an injury").[15]

10      Other district courts in this circuit have reached the same conclusion.  In *Gonzalez v.*

11  *Proctor & Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007), for example, the court found a lack of

12  predominance in a deceptive marketing claim.  Even though the defendant itself handled

13  marketing, it used "a wide variety of representations in its labeling, television commercials,

14  website promotions, and other promotions as to" the products at issue.  *Id.* at 623.  The court

15  found "this case is controlled by those … cases that refused to certify a class when the plaintiffs

16  could not allege that the same representations were specifically made to each class member."

17  *Id.* at 624.  *See also Minkler v. Kramer Labs., Inc.*, 2013 U.S. Dist. LEXIS 90651, at *16 (C.D.

18  Cal. Mar. 1, 2013) (no predominance for deceptive marketing claims where "some of the

19

20  sticker, regardless of the advertising seen by the class member.  *Kelley*, 251 F.R.D. at 559.  After discovery, the
    price inflation claim foundered on a failure of proof, and Judge Pechman decertified the class.  *Kelley v. Microsoft*
21  *Corp.*, 2009 WL 413509, at *8 (W.D. Wash. Feb. 18, 2009).  The *Kelley* plaintiffs then tried yet another approach
    to class certification, which Judge Pechman again denied.  When plaintiffs appealed the last decision, the Ninth
22  Circuit remanded for the court to reconsider the denial of certification as to one class, directing that it "balance
    against the issues requiring individualized proof, any questions of law or fact common to the … class members."
    *Kelley v. Microsoft Corp.*, 395 F. App'x 431, 432 (9th Cir. 2010).  Judge Pechman again denied certification,
23  "reaffirm[ing her] previous determination that causation requires a fact-intensive, individual inquiry into the
    motivations of each consumer."  *Kelley v. Microsoft Corp.*, No. 2:07-cv-00475-MJP, "Order Denying Class
24  Certification" [Dkt. 405] at 7 (W.D. Wash. May 24, 2011).  The same is true here.

25  [15] The Washington Supreme Court has stopped short of requiring "reliance" for a CPA damages claim.  But that
    makes no difference for class certification:  the CPA still requires a plaintiff to show an unfair or deceptive
26  practice *caused* loss, injury, and actual damage.  The causation inquiry presents a similar predominance challenge
    as reliance:  a plaintiff cannot plausibly claim an unfair or deceptive practice to which she was not exposed caused
    her loss, injury, or damage, as the CPA requires.  *See Blough*, 2014 U.S. Dist. LEXIS 100600, at *38 (Martinez,
27  J.); *Helde*, 2013 U.S. Dist. LEXIS 147006, at *15 (Lasnik, J.); *Kelley*, 251 F.R.D. at 558 (Pechman, J.).

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 40

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    members of the Class never saw or relied upon the images on [product] packaging on which

2    Plaintiff claims he exclusively relied"); *Campion*, 272 F.R.D. at 536 (no predominance for

3    claims of deceptive marketing of home warranty plans where "proposed class members may

4    have seen some, all or none of these statements prior to the purchase of their home warranty

5    plans"). *See also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (court

6    cannot certify a class "[w]here there are material variations in the nature of the

7    misrepresentations made to each member of the proposed class, … because plaintiffs will need

8    to submit proof of the statements made to each plaintiff, the nature of the varying material

9    misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to

10   sustain their claims"); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 586 (N.D. Ill. 2005) (denying

11   certification based on lack of predominance; "[w]ithout determining what each member heard,

12   saw, or knew, it is impossible to assign liability"), *aff'd*, 472 F.3d 506, 514 (7th Cir. 2006).

13        The record contains PSMS marketing material of every stripe.  Geier has offered no

14   way for a finder of fact to determine ***without individual proof*** which class members saw fully

15   CTIA-compliant advertising, which class members saw advertising with only technical

16   shortcomings, and which class members (if any) saw advertising having a capacity to deceive.

17   Nor can Geier show any common link between Mobile Messenger and the advertising any

18   particular class member may have seen.  Because all of those issues require individual proof to

19   establish a claim, Geier cannot show common issues predominate over individual issues.

### b.    Individual Issues Predominate as to Evidence of Each Class Member's Authorization of Her Subscription.

21        Leaving aside the individual questions raised by the wide range of PSMS advertising in

22   the online marketplace, a member of Geier's putative class who actually ***authorized*** a PSMS

23   charge (or received a full refund) has no claim.  Geier has not recognized the issue, much less

24   offered a way to prove on a class wide basis which members of the proposed class authorized

25   their PSMS charges.  He has failed to satisfy Rule 23(b)(3)'s predominance requirement.

26        Geier's brief ignores that another district judge considering a similar claim against

27   Mobile Messenger found a lack of predominance for this very reason.  In *Fields v. Mobile*

*Messenger America, Inc.*, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013), plaintiffs alleged a claim against Mobile Messenger under the federal Telephone Consumer Protection Act ("TCPA") and California's analog to the CPA, as well as for common law torts, claiming Mobile Messenger sent unauthorized text messages in connection with its PSMS programs and faced liability for unauthorized charges.  Unlike the situation here, the *Fields* plaintiffs sought certification of a class of subscribers to a single content provider, i.e., Wise Media LLC.  2013 WL 6073426, at *1-2.  But even with the class limited to that one provider, the court found the need to show text messages were unauthorized was "a showstopper," since "*even if* consent is an affirmative defense, individualized inquiries regarding consent remain."  *Id*. at *2-4.  Because plaintiffs "failed to prove predominance under Rule 23(b)," the court denied class certification.  In so doing, the *Fields* court rejected the **same** arguments Geier makes here:

> Plaintiffs offer evidence that many putative class members, including named plaintiffs, did not consent to being enrolled in the subscription plans. Furthermore, wireless carriers issued notices of suspension and termination of defendants' subscription plans in part because of abnormally high subscription refund rates.  [¶]  After examining the evidence and other submitted documentation, this order finds that plaintiffs have failed to meet their burden to prove that the issue of consent can be addressed with class-wide proof.

*Id.* at *4 (citations omitted).  Further, while *Fields* involved both deceptive marketing and TCPA claims, rather than being limited to Geier's claim of alleged "cramming" of charges on cell phone bills, courts likewise deny certification of common law and statutory cramming cases based on the need for individual proof of authorization.  *See Midland Pizza, LLC v. Sw. Bell Tel. Co.*, 277 F.R.D. 637, 642 (D. Kan. 2011) (denying certification of claim alleging carrier negligently failed to prevent unauthorized third party charges); *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 WL 4751659, at *5 (S.D. Ind. Nov. 16, 2010) (denying certification of unjust enrichment claim against aggregator defendants, *aff'd*, 654 F.3d 728 (7th Cir. 2011); *Stern v. Cingular Wireless Corp.*, 2009 WL 481657, at *5 (C.D. Cal. Feb. 23, 2009) (denying certification of claim under the CLRA).

Geier offers no reason why this Court should depart from *Fields*, which follows settled law in holding that individual issues predominate when the representative plaintiff must litigate

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 42

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   authorization or consent for each class member.  Courts across the country have denied class

2   certification of unfair and deceptive marketing claims where they require individual inquiry

3   into the "personal idiosyncratic choice [implicated in] a consumer purchase."  *McLaughlin v.*

4   *Am. Tobacco Co.*, 522 F.3d 215, 225 n.7 (2d Cir. 2008).  *See also Poulos v. Caesars World,*

5   *Inc.*, 379 F.3d 654, 665-66 (9th Cir. 2004) (affirming denial of class certification because only

6   individual proof could show why class members played electronic poker and slot machines,

7   making individual issues predominate in proving causation); *Oshana*, 225 F.R.D. at 585-86

8   (diet cola); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658-59 (D. Nev. 2009) (pet food

9   "Made in the USA"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2007

10  U.S. Dist. LEXIS 89349, at *19-31 (N.D. Ill. Dec. 4, 2007) (tools "Made in USA"); *Thorogood*

11  *v. Sears, Roebuck & Co.*, 547 F.3d 742, 747-48 (7th Cir. 2008) (dryers).[16]

12          Not even the staunchest critics of the PSMS industry claim *all* charges were incurred

13  without authorization.   Indeed, even surveys of PSMS subscribers using biased sampling

14  methodology (designed to exaggerate unauthorized charges) report from 40% to 56% of PSMS

15  subscriptions *were authorized*.  *See* Mobile Cramming:  An FTC Staff Report (July 2014) at

16  15-16 (Marshall Decl. [Dkt. 83-1], Ex. 4 at 55 of 210) (reporting on Vermont and Illinois

17  surveys, as well as CTIA criticisms of surveys).  Assuming these biased results to be true

18  (which they are not), Geier offers no way to determine through class-wide proof which class

19  members authorized their subscriptions and which did not.  This Court should find an absence

20  of predominance under Rule 23(b)(3).

21

22

23  _____

24  [16] For similar reasons, standing issues also preclude a finding that common issues predominate.  "No class may be
certified that contains members lacking Article III standing."  *Mazza v. Am. Honda Motor Corp.*, 666 F.3d 581,
594 (9th Cir. 2012) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)).  *See also Oshana v.*
25  *Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir.
2010).  "[S]tanding requires that (1) the plaintiff suffered an injury in fact … (2) the injury is fairly traceable to the
26  challenged conduct, and (3) the injury is likely to be redressed by a favorable decision."  *Mazza*, 666 F.3d at 594-
595 (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).  Geier offers no way to
determine on a class basis, without individual proof, which (if any) class members suffered injury traceable to the
27  challenged conduct of Mobile Messenger.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 43

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### 2. Geier Cannot Show a Class Action Is Superior to Resolve the Proposed Class's Claims Given Remedies Offered by Carriers with Far Greater Wherewithal than Mobile Messenger.

A plaintiff satisfies Rule 23(b)(3)'s superiority requirement only if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency" and "no realistic alternative exists" to class resolution. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 253 F.3d at 1192. Further, "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Id.* For example, in *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 208 F.R.D. 625, 630 (W.D. Wash. 2002), Judge Rothstein found a lack of superiority based largely on difficulties in identifying class members.

Geier's proposed class action fails Rule 23(b)(3)'s superiority test. As explained above, Geier's class claims founder on the need for Geier to prove causation, loss, and damage on an individual basis. In contrast, members of Geier's proposed class currently have other ways to recover unauthorized PSMS charges without *any* litigation, class or otherwise. In June 2014, T-Mobile—one of the nation's four major wireless carriers—announced a refund program allowing *any* past or present customer (including all members of Geier's proposed class who were T-Mobile customers) to file an online claim for a full refund of their unauthorized PSMS charges. *See* Prince Decl., Ex. 9. Then, on October 8, 2014, the FTC, FCC, and the Attorneys General of fifty states announced an agreement with AT&T—Geier's carrier—which has as its centerpiece a comprehensive refund program for the same people Geier seeks to represent, among others. Prince Decl. Exs. 10, 18, 19. Under the FTC-administered program, AT&T will provide individual notice to customers of their right to refunds. *See* Stip. Order for Permanent Injunction ¶ VI.I at 23-24, in *FTC v. AT&T Mobility, LLC*, No. 1:14-mi-99999-UNA [Dkt. 2060-2] (N.D. Ga. Oct. 8, 2014) (Prince Decl., Ex. 10). Both T-Mobile's program and AT&T's Stipulated Order with the FTC allow consumers to receive refunds of *any* unauthorized

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 44

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    charges, not just those through Mobile Messenger.[17]  *See* Prince Decl., Exs. 9, 10.

2           In addition to securing redress from carriers, the FTC has brought enforcement actions

3    against content providers—some of which have resulted in monetary recoveries.  *See See FTC*

4    *v. MDK Media, Inc.*, No. 14-cv-5099 (C.D. Cal. Aug. 14, 2014); *FTC v. Jesta Digital, LLC*,

5    No. 1:13-cv-01272-JDB (D.D.C. Aug. 20, 2013); *FTC v. Tatto, Inc.*, No. 2:13-cv-081912-DSF-

6    FFM (C.D. Cal. Dec. 4, 2013); *FTC v. Wise Media, LLC*, No. 1:13-cv-01234 (N.D. Ga. Apr.

7    26, 2013).[18]  By the time the Court decides this motion, the FTC, FCC, and Attorneys General

8    may have expanded class members' opportunities for refunds—all without the individual fact-

9    finding required for private litigation recoveries.  *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595,

10   605 (9th Cir. 1993) (noting lesser burdens of proof for FTC than for private plaintiffs).

11          In these circumstances, a private damages class action limited to only those Washington

12   customers who purchased "white label" PSMS products from a single aggregator would be a

13   decidedly inferior way to proceed.  The Ninth Circuit recognized a similar principle in *Kamm v.*

14   *Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975), where fourteen plaintiffs sued the

15   promoters of a planned real-estate development on behalf of a proposed class of 59,000,

16   accusing the promoters of "failing to disclose fully . . . the nature of the property and the risks

17   inherent in the investment plan."  *Id.* at 206–207.  The district court "assumed that the alleged

18   class satisfied all the prerequisites" of Rule 23(a) and (b)(3), but held a class action was not

19   superior because the "California Attorney General" had already filed suit "with respect to the

20   same controversy and relief had been obtained."  *Id.* at 207.  Plaintiffs argued the state action

21

---

[17] Verizon implemented its own refund program in 2011, covering 120 short codes it considered likely to have
unauthorized charges, which Geier's proposed class could have accessed.  *See* Prince Decl., Ex. 8.  Of the major
carriers, only Sprint has not implemented a PSMS refund program.

[18] In the FTC's action against MDK Media, the FTC alleged four former Mobile Messenger executives started
their own content providers, which they used for personal gain *unbeknownst to* (and at the expense of) Mobile
Messenger's owners.  *See* Prelim. Receiver Report [Dkt. 61], *FTC v. MDK Media, Inc.*, No. 14-cv-5099 (C.D. Cal.
Aug. 14, 2014).  According to the *MDK* Receiver, each executive set out to "emulate the big SMS profits being
made by Mobile Messenger customers by becoming a customer himself, but without the knowledge of Mobile
Messenger or the carriers."  *Id.* 17:20-23.  When Mobile Messenger learned it was a victim of this scheme, the
company amended an already pending arbitration demand to include claims against these former executives.  *See*
Machock Decl. ¶ 14 & Ex. 12; *see also* Prelim. Receiver Report [Dkt 61-2] at 10 of 49, *FTC v. MDK Media, Inc.*,
No. 14-cv-5099 (C.D. Cal. Aug. 14, 2014) (Prince Decl., Ex. 23) (Claimant's Arbitration Claims at 1).

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 45

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

"involved a different controversy," "provided relief for only a small part of the class," and that a court should not "weigh[] a judicial remedy against an administrative remedy" when determining if a class action is the superior method to resolve the dispute.  *Id*. at 209, 211.  The Ninth Circuit acknowledged the Attorney General's action would not protect "all members of the class" and would not "recover an amount that is even close to that sought in the class action."  *Id*. at 211.  Despite that, the court held "[a] class action would require a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work" done by the California Attorney General, and "[s]ignificant relief had been realized in the state action through restitution[,] … a program to settle future disputes," and "a permanent injunction" against the use of deceptive marketing practices.  *Id*. at 212.  "[T]he class action was not a superior method of resolving the controversy."  *Id*.

The same principles apply here with even greater force.  Every customer who—like Ms. Geier—subscribed to a PSMS product using AT&T as their carrier has an opportunity to obtain a full refund and the benefit of FTC-approved injunctive relief, without the necessity of *any* private litigation.  Any T-Mobile customer, past or present, likewise has an opportunity to recover any unauthorized PSMS charges.  Those carriers have direct relationships with class members and can provide notice through means not available to Mobile Messenger.[19]  Further, AT&T and T-Mobile have committed to full refunds of PSMS charges, not merely a refund of the fraction Mobile Messenger received, as sought in the FAC.  *See* FAC [Dkt. 13] Prayer ¶ B (seeking recovery of "all payments received" by defendants).  It would not be "superior" under Rule 23(b)(3) for Geier, a fully-refunded AT&T customer, to pursue private class litigation to secure relief currently available to other AT&T customers.

---

[19] Mobile Messenger has only a list of cell phone numbers, which are now *at least* one year old.  Recognizing the inadequacy of that information, Geier suggests Mobile Messenger might provide notice by "subpoena[ing] the names and addresses of Class members from the carriers and then mail notice directly to the members via First Class mail."  Mot. 49:12-15.  Thus, Geier asks Mobile Messenger to duplicate the effort already being undertaken by AT&T and T-Mobile with respect to *all* PSMS charges, not just those attributable to Mobile Messenger.  Geier makes no effort to explain how that redundant and confusing process could be "superior" in any sense of the word.

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 46

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

### 3. The Court Should Reject Geier's Half-Hearted Request for Rule 23(c)(4) Certification of a Class Limited to Liability Issues.

Geier tosses off the idea of issue certification under Rule 23(c)(4), suggesting the Court should certify a class "to establish the first three elements of the CPA claim." Mot. 48:20-22. But "issue certification should never be … used to 'fix' manifest Rule 23(b)(3) predominance problems presented where key issues going to liability require individualized proof." *Moeller v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 104454, at *16 (N.D. Cal. July 26, 2012) (quoting Joseph M. McLaughlin, McLaughlin on Class Actions § 4:43 (2011)). "Reading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended." *Castano*, 84 F.3d at 745 n.21 (citing *In re N.D. Cal,. Dalkon Shield IUD Prods. Liability Litig*., 693 F.2d 847, 856 (9th Cir. 1982)).

Certification of a Rule 23(c)(4) issues class would be pointless. Even if Geier limited his certification request to liability issues, no class member could establish a CPA claim without showing what advertisement(s) the class member saw, what the class member intended when she subscribed, and whether the class member already received a refund—among other things. As a result, in contrast to the AT&T and T-Mobile refund programs already underway, class members would need to provide individualized proof in thousands of mini-trials (each preceded by individual discovery) before recovering anything. "The few issues that might be tried on a class basis …, balanced against issues that must be tried individually, indicate that the time saved by a class action may be relatively insignificant." *Dalkon Shield*, 693 F.2d at 856. The Court should reject Geier's half-hearted request for certification under Rule 23(c)(4).

### IV. CONCLUSION

For the reasons stated above, Mobile Messenger respectfully requests that the Court deny Geier's Motion for Class Certification.[20]

---

[20] If the Court certifies a class (which Mobile Messenger believes it should not do, for the reasons set forth in this Response), the class should be defined using a starting date for the class period no earlier than November 13, 2009, approximately one year later than Geier advocates, at least for class members other than AT&T Wireless customers. In early 2010, a Circuit Court Judge in Cook County, Illinois, approved a settlement covering a class

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 47

DWT 25097851v8 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    DATED this 17th day of November, 2014.

2                                    DAVIS WRIGHT TREMAINE LLP
                                     Attorneys for Defendants

3                                    By s/ Colin G. Prince

4                                       Stephen M. Rummage, WSBA #11168
                                        Colin G. Prince, WSBA #43166
5                                       1201 Third Avenue, Suite 2200
                                        Seattle, Washington 98101
6                                       Email: steverummage@dwt.com
                                        Email: colinprince@dwt.com
7                                       Tel: 206-757-8300

8

9

10

11

12

13

14

15

16

17

18

19

20

21   _____
     consisting of "[a]ll current and former Wireless Subscribers in the United States and its territories who, any time
22   from the date m-Qube started doing business until November 13, 2009 were billed for Mobile Content associated
     with m-Qube that was not authorized."  Prince Decl., Ex. 20 ¶ 2 (Final Order and Judgment, *Parone v. m-Qube,
23   *Inc., et al.*, No. 08-CH-15834 (Cook Cnty., Ill. Feb. 24, 2010)).  That settlement released all claims "regardless of
     legal theory, and regardless of the type of amount of relief or damages claimed, against any of the Released Parties
24   arising out of or in any manner relating to a charge to any Wireless Subscriber for Mobile Content processed by
     m-Qube … relating to any allegation or contention that such charge was unauthorized," except for "claims relating
25   to Mobile Content delivered to customers of AT&T Mobility or its predecessors."  Prince Decl., Ex. 21 at 10-11
     (Stipulation of Class Action Settlement, *Parone v. m-Qube, Inc., et al.*, No. 08-CH-15834 (Cook Cnty., Ill. Oct.
26   27, 2009)).  The Released Parties in *Parone* included m-Qube, defined to embrace its "respective parent,
     subsidiaries, predecessors, successors and other related entities."  *Id.* at 6.  Mobile Messenger is within the scope
27   of the definition of m-Qube, and Geier's claims fall within the scope of the released claims.  *See* Machock Decl. ¶
     5 (explaining that m-Qube processed Mobile Messenger mobile content during 2008-2009 time frame).  Any class
     must therefore exclude those whose claims were released in *Parone*.

MOBILE MESSENGER'S RESPONSE TO MOTION                                    Davis Wright Tremaine LLP
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 48                                    LAW OFFICES
                                                                        1201 Third Avenue, Suite 2200
DWT 25097851v8 0097808-000001                                            Seattle, WA  98101-3045
                                                                        206.622.3150 main · 206.757.7700 fax

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on November 17, 2014, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system, which will send notification of such filing to

4   those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be

5   served in accordance with the Federal Rules of Civil Procedure.

6       DATED this 17th day of November, 2014.

7

8                                    DAVIS WRIGHT TREMAINE LLP
                                     Attorneys for Defendants m-Qube, Inc. and
                                     Mobile Messenger Americas, Inc.,

9

10                                   By /s/ Colin G. Prince
                                        Stephen M. Rummage, WSBA #43166

11                                      1201 Third Avenue, Suite 2200
                                        Seattle, Washington  98101-3045

12                                      Telephone: (206) 622-3150
                                        Fax: (206) 757-7700

13                                      E-mail:  colinprince@dwt.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOBILE MESSENGER'S RESPONSE TO MOTION
FOR CLASS CERTIFICATION (13-cv-354-TSZ) – 49

DWT 25097851v8 0097808-000001