The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Richard A. Geier, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>M-Qube, Inc.; Mobile Messenger Americas, Inc., d/b/a Mobile Messenger; and John Does 1-20,<br><br>Defendants. | No. 13-cv-354-TSZ<br><br>MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN OPPOSITION TO CLASS CERTIFICATION<br><br>*Note on Motion Calendar*: October 2, 2015 |

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - i
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# I. INTRODUCTION

Mobile Messenger Americas, Inc., and M-Qube, Inc. (collectively, "Mobile Messenger") file this Supplemental Brief in Opposition to Class Certification pursuant to the Stipulation and Order re: Class Certification Supplemental Briefing [Dkt. 184]. Mobile Messenger repeats and re-adopts the arguments set forth in its Response to Motion for Class Certification [Dkt. 116 (under seal), Dkt. 134] and Surreply and Motion to Strike [Dkt. 136], which show (among other things) that Geier, like the plaintiff in a substantially identical case filed against Mobile Messenger, "failed to meet [his] burden to prove that the issue of consent can be addressed with class-wide proof." *Fields v. Mobile Messenger Am., Inc.*, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013). Rather than repeat that briefing, Mobile Messenger limits this brief to developments since briefing closed on the class motion.

In its Response [Dkt. 116, 134], Mobile Messenger argued the Court should not certify a class in part because "AT&T Wireless and T-Mobile have already made ***full refunds*** available to all of their PSMS customers, without litigation," and government regulators have "promised more action." Resp. 3:20-22 (emphasis added). Regulators kept their promise. Since the parties completed class briefing last November, T-Mobile's voluntary refund program has been memorialized in a settlement with the Federal Trade Commission ("FTC"), the Federal Communications Commission ("FCC"), and state attorneys general, which this Court approved. Further, the Consumer Financial Protection Bureau ("CFPB"), the FCC, and state attorneys general settled with both Sprint and Verizon, requiring both to make ***full refunds*** available to customers who claim to have been unlawfully charged for a PSMS subscription.

With the new settlements, all four major U.S. wireless carriers have agreed to pay hundreds of millions of dollars in refunds and fines and to injunctive relief barring PSMS subscriptions, providing a remedy to virtually every cell phone customer. In seeking certification for a Washington-only class, Geier—a consumer who received a full refund ***before*** he sued—asks the Court to certify a class to pursue duplicative remedies. A class action would not be a superior method of resolution on these facts, as Rule 23(b)(3) requires for certification.

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 1
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## II. SUPPLEMENTAL FACTS

### A. T-Mobile Settlement

In its Response [Dkt, 116, 134], Mobile Messenger described a voluntary refund program announced by T-Mobile in June 2014, allowing *any* past or present customer—including members of Geier's proposed class—to receive a full refund of any unauthorized PSMS charges on their T-Mobile accounts. *See Welcome to the T-Mobile Premium SMS Refund Program*, T-Mobile, www.t-mobilerefund.com (last visited Sept. 18, 2015) (no longer active; giving consumers until June 30, 2015, to file claims); Prince Decl. [Dkt. 117], Ex. 9 (printout of www.t-mobilerefund.com, describing voluntary refund program).

On December 22, 2014, this Court entered a Stipulated Order and Monetary Judgment (the "Stipulated Order") in the FTC's lawsuit against T-Mobile. *See FTC v. T-Mobile USA*, No. 14-cv-00967-JLR [Dkt. 18] (W.D. Wash. Dec. 22, 2014). The Stipulated Order adopts T-Mobile's refund program providing the *same* consumer relief Geier seeks for the putative class. *See* Tewell Decl. Ex. A. Under the Stipulated Order, "[u]pon a Consumer's affirmation that the Consumer was charged for unauthorized Commercial PSMS charges, T-Mobile shall provide prompt refunds to the Consumer for the unauthorized Commercial PSMS charges." *Id.* at 11:13-15. T-Mobile agreed to pay $90 million, *id.* 10:9-10, with $67.5 million available for consumer redress through the PSMS claim process or the forgiveness of debt, *id.* 13:5-6 At the same time, T-Mobile entered into a Consent Decree with the FCC providing that "T-Mobile shall not make available to Consumers the option to purchase Products through Commercial PSMS and shall not bill new charges for Commercial PSMS." Tewell Decl. Ex. B ¶ 16(a) at 6.

### B. Sprint Settlement

In May 2015, Sprint settled PSMS claims with the FCC, CFPB, and all fifty states, including Washington. *See* Tewell Decl. Ex. C ¶ 3 (FCC Sprint Order and Consent Decree). Like the T-Mobile settlement, the FCC Order provides redress for the class claims Geier seeks to pursue here, i.e., "that Sprint charged consumers for third-party products and services that the consumers did not authorize, a practice that is more commonly known as cramming." *Id.*

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 2
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

¶ 1. Sprint agreed to pay $68 million, of which $50 million will "fund a consumer redress program"; $12 million will go "to the fifty states"; and $6 million will be paid in "fines to the U.S. Treasury." *Id.* ¶ 3. In addition to damages, the regulators obtained injunctive relief barring "Sprint from charging customers for third-party PSMS products or services." *Id.*; *see also* Tewell Decl. Ex. E (CFPB Settlement) § III at 14 ($50 million for redress).

The order also requires Sprint to "develop and implement a system to verify any "third-party charges via consumers' express informed consent," "block third-party charges for free," "help customers identify unwanted charges," "place clear descriptions of such charges in a dedicated section on customer bills," and "report its compliance with the terms of the settlement for six years." Tewell Decl. Ex. C ¶ 3. In short, Sprint has already agreed to greater protections for the class than Geier seeks. *Cf.* Second Am. Compl. at 18 [Dkt. 145].

### C. Verizon Settlement

On the same day they announced the Sprint settlement, government regulators announced a virtually identical settlement with Verizon. Verizon agreed to pay $90 million, including $70 million "to fund a consumer redress program," $16 million "to the fifty states," and $4 million in fines. Tewell Decl. Ex. F ¶ 3 (FCC Verizon Order); *see also* Tewell Decl. Ex. G (CFPB Settlement) § III at 11 ($70 million for redress). The Verizon settlement provides the same injunctive relief as the Sprint settlement, i.e., a complete bar on further PSMS charges, a verification system for any third-party charges, free consumer blocks on charges when requested, helping consumers identify unwanted charges, clear billing descriptions, and reporting of compliance for six years. Tewell Decl. Ex. F ¶ 3.

### D. Total Extent of Existing Consumer Redress

With these settlements, all four major carriers now have robust consumer-refund programs in place and have agreed not to bill subscribers for PSMS subscriptions. As discussed in Mobile Messenger's Response [Dkt. 116, 134], AT&T already settled PSMS cramming claims and provided a comprehensive refund program that permitted consumers to obtain a full refund of unauthorized charges. *See* Resp. at 15:10-19. With the new settlements,

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 3
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

the four major carriers have now made more than **$200 million** available for redress. In a filing seeking approval of its recent settlement, Sprint provided the following table summarizing the relief the government has obtained without the necessity of a class action:

| Company | Total Redress Amount | Total Fines | Key Injunctive Terms (all settlements) |
|---|---|---|---|
| AT&T | $80 million | $25 million | Cease making PSMS available, provide information on stacking practices to ensure charges are authorized, training and reporting |
| T-Mobile | $90 million | $22.5 million | |
| Verizon | $70 million | $18 million | |
| Sprint | $50 million | $18 million | |

Tewell Decl. Ex. D (*Consumer Fin. Prot. Bureau v. Sprint Corp.*, No. 14-cv-9931 [Dkt. 24] at 16 (S.D.N.Y. June 15, 2015)).

### III.    ARGUMENT

The four major carriers have made refunds available to virtually every potential class member through the FTC, FCC, and CFPB settlements. As a result, duplicative class-action litigation cannot be the superior mode of resolution under Rule 23(b)(3)—even leaving aside the individual issues of consent that pervade this case.

Where regulators have already obtained relief for the class, a class action is "not a superior method of resolving the controversy," and a court should deny certification. *Kamm v. Cal. City. Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). In *Kamm*, where a government regulator had filed suit "with respect to the same controversy and relief had been obtained," the Ninth Circuit held a class-action "would largely duplicate and possibly to some extent negate the work" already performed by regulators. *Id.* at 207, 212; *see also* Resp. [Dkt. 134] 45:11-46:22 (superiority absent where remedies are already available); *see also In re Phenylpropanolamine Prods. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) ("It makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress.") (citing *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 462-65 (D. N.J. 1998) (no superiority where reimbursement available through recall program and administrative remedy);

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 4
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Berley v. Dreyfus & Co.*, 43 F.R.D. 397, 398-99 (S.D.N.Y. 1967) (rejecting plaintiffs' proposal to "needlessly replace a simple, amicable settlement procedure with complicated, protracted litigation" where customers could already obtain refund)).

One recent decision has followed *Kamm* in holding that a court should deny class certification where (a) litigation would "largely duplicate" regulators' efforts and (b) putative class members already have a remedy. In *Imber-Gluck v. Google, Inc.*, 2015 WL 1522076 (N.D. Cal. Apr. 3, 2015), the plaintiff alleged Google "charged users for unauthorized purchases" relating to games "designed to induce purchases" by children on smartphones and other devices—similar to Geier's claims of deceptive charges here. *Id.* at *1. But the FTC had already settled charges arising from "the same conduct," and consumers could obtain "full refunds" for any purchases of "unauthorized In-App Charges incurred by minors." *Id.* Although the plaintiff argued the FTC settlement provided "inadequate notice" and "d[id] not allow for punitive damages," the district court held class-action litigation was not the superior method of resolution. *Id.* at *2-3. Rather, the settlement "provides significant relief in the form of a complete refund and an injunction," and class litigation would "'require a substantial expenditure of judicial time which would largely duplicate' the work of the" regulator's investigation. *Id.* at *3. The plaintiff's complaints about punitive damages and notice were "not sufficient to overcome the comprehensive relief already provided." *Id.* Thus, because the FTC settlement "provide[d] nearly all, if not all, of the possible relief sought" by the plaintiff, "maintaining a class action" was not the superior method of resolution. *Id.*

At this point, members of Geier's putative class have had an opportunity to obtain a complete refund by virtue of a government settlement. All four major wireless carriers— AT&T, T-Mobile, Sprint, and Verizon—have settled with federal regulators and state attorneys general, offering notice and full refunds to the very class members Geier seeks to represent. Geier proposes only a duplicative action that piggy-backs and needlessly duplicates regulators' efforts. Indeed, Geier's Reply even goes so far as to ask the Court to certify a class against Mobile Messenger to "assist Class members in obtaining refunds for Mobile Messenger's

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 5
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

unauthorized charges from … wireless carriers"—tacitly admitting the availability of complete relief through the carrier refund process. Reply [Dkt. 126, 127] at 14:12-13. In short, among the many reasons to deny certification in this case, the Court should deny Geier's motion because what he seeks to accomplish has already been done.

Geier may argue, as he did with respect to his own ***complete*** refund from AT&T, that the carriers are collateral sources, so their refunds have no bearing on the potential recovery of the class here. *See* Reply [Dkt. 126 (sealed)] at 3:3-11; 12:20-13:5 (arguing collateral source rule as to Geier's full refunds); *see also* Surreply [Dkt. 136] (addressing collateral source argument). But the argument is both contrary to law and completely illogical. "The collateral source rule is applied to prevent [a defendant] from receiving a benefit from payments made by a source '***wholly independent*** of the tortfeasor.'" *Petersen-Gonzales v. Garcia*, 120 Wn. App. 624, 636, 86 P.3d 210 (2004) (quoting *Wash. Ins. Guar. Ass'n v. Mullins*, 62 Wn. App. 878, 886 (1991)) (emphasis added). Payments coming from related, non-independent sources do ***not*** fall within the collateral source rule and may be considered. *Id.* (refusing to exclude uninsured motorist insurer from litigation because "UIM carrier stands in the shoes of the underinsured tortfeasor and UIM payments are treated as if made by the tortfeasor"). *See Lange v. Raef*, 34 Wn. App. 701, 704-05, 664 P.2d 1274 (1983) (collateral source rule does not apply where the source of the payments is the defendant's insurer) (citation omitted). The collateral source rule therefore does not apply when the source of funds and the defendant were part of the same allegedly tortious transaction. *See, e.g., Westchester Specialty Ins. Servs. Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1512 n.13 (11th Cir. 1997); *Crowley v. Trust Co. Bank*, 466 S.E.2d 24, 26 (Ga. Ct. App. 1995) (collateral source rule not applicable when third-party source was guarantor of loan, "not wholly independent of the loan transaction").

Here, no one can seriously argue the carriers' refunds come from a source "wholly independent" of Mobile Messenger (a position that, if accepted, would allow each customer to obtain three refunds from, respectively, carriers, aggregators, and content providers for the same charge). Geier opens his class certification brief by quoting an FTC Report describing

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 6
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

"[t]he process of placing a charge for third-party services on a phone account" as "typically involv[ing] a number of parties, including merchants, billing intermediaries [i.e., aggregators], and mobile carriers." Motion [Dkt. 81 (sealed)] at 2:22-24. As part of that integrated process, carriers, aggregators, and content providers *shared* PSMS income—although "Mobile Messenger generally received the smallest share." Machock Decl. [Dkt. 132] at 3:15-17. And because Mobile Messenger has an obligation to indemnify carriers, "when carriers refunded subscription fees to their customers for Mobile Messenger aggregator clients, those fees were deducted from the calculation of Mobile Messenger's monthly payments from the carriers"— making Mobile Messenger bear the economic burden of carrier refunds. *Id.* at 6:10-12.

Thus, carriers, content providers, and Mobile Messenger all participated in the transactions giving rise to this litigation, sharing the revenues; the carriers are not in any sense "wholly independent" of Mobile Messenger, as would be required for the collateral source doctrine to apply. *See Peterson-Gonzales*, 120 Wn. App. at 636.[1] The carrier refund programs make this proposed class action seeking refunds redundant and completely unnecessary.

## IV. CONCLUSION

For the reasons stated above and in Mobile Messenger's previous filings with the Court [Dkt. 102-119, 132-134, 136], the Court should deny Geier's Motion for Class Certification.

DATED this 18th day of September, 2015.

Davis Wright Tremaine LLP
Attorneys for Mobile Messenger Americas, Inc., and M-Qube, Inc.

By */s/ Candice Tewell*
Stephen M. Rummage WSBA #11168
Candice Tewell, WSBA #41131

---

[1] The FTC and CFPB settlements with the carriers illustrate the functional equivalence between a refund from a carrier and a refund from an aggregator (or content provider) involved in supplying PSMS service to the carrier's subscriber: each agreement allows the carrier to ascertain whether the carrier customer seeking a refund already received that refund from an aggregator or content provider before the carrier itself offers a refund. *See* Prince Decl. [Dkt. 117] Ex. 10 § III.B.4 (allowing AT&T to determine if customer seeking a refund "has already received a credit or refund from the Third Party for some or all of the claimed Unauthorized Third-Party Charge"); Tewell Decl. Ex. A § III.B.4 (same provision for T-Mobile); Tewell Decl. Ex. F § 11(f)(iv) (same provision for Verizon); Tewell Decl. Ex. C § 15(f)(v) (same provision for Sprint). Allowing carriers to ask about refunds from Mobile Messenger and content providers would make no sense if the parties were in fact "wholly independent."

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 7
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: 206-622-3150
E-mail: steverummage@dwt.com
       candicetewell@dwt.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 8
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 18th day of September, 2015.

By *s/ Candice Tewell*
Candice Tewell, WSBA #41131
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone: 206-622-3150
E-mail: candicetewell@dwt.com

MOBILE MESSENGER'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO CLASS CERTIFICATION (No. 13-cv-354) - 9
DWT 27832379v6 0097808-000001

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax