UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD A. GEIER, individually and on behalf of all others similarly situated,

        Plaintiff,

   v.

M-QUBE, INC., et al.,

        Defendants.

C13-354-TSZ

ORDER

THIS MATTER comes before the Court on plaintiff's Renewed Motion for Class Certification, docket no. 212.  Plaintiff asks the Court to certify the following class: "All residents of Washington who, at any time from October 17, 2008 to the present, were charged for one of Mobile Messenger's white-label PSMS programs in association with a website double opt-in subscription even though the program was never accessed in relation to that subscription."[1]

---

[1] Plaintiff's proposed class has been something of a moving target.  The Court previously denied another proposed class, docket no. 200.  Plaintiff has now filed this renewed motion, with one definition in the opening motion, one in the reply, and one provided at oral argument.  The Court proceeds by analyzing the final class proposed at the time of

ORDER - 1

*Background*

The Court's previous order, docket no. 200, contains a full recitation of the facts. Briefly, Mobile Messenger served as a billing aggregator that linked "content providers," which interacted directly with cell phone subscribers, and cell carriers such as AT&T and Verizon. Content providers would advertise products such as a reverse auction game to cell phone subscribers who would enroll via a "double opt-in process." Plaintiff contends that the system was rife with fraud and led to the unknown billing of many cell subscribers. Even though some thousands of Washington residents subscribed to and were billed for these programs, only a small portion of those individuals ever took advantage of them. Thus, plaintiff argues that the overwhelming majority of subscribers were likely billed through fraudulent means.

Geier previously brought a motion to certify class that focused on the deception prong of the Washington Consumer Protection Act ("CPA"). *See* docket no. 81. The Court denied that motion without prejudice, resulting in this renewed motion which focuses on the unfair practices prong of the CPA. Defendants argue that the class is unascertainable, lacks commonality, individual issues would predominate, and that a

---

oral argument. Regardless of which class plaintiff requests in this renewed motion, the Court would reach the same conclusion as outlined in this Order.

ORDER - 2

class action is not the superior method of resolution.[2]  For the following reasons, the motion is DENIED with prejudice.[3]

*Discussion*

### A. Standard for Class Certification

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, --- U.S. ----, ----, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  Certification of a class is within the discretion of the Court, guided by Rule 23.  That rule "does not set forth a mere pleading standard," but instead embodies evidentiary thresholds that plaintiff must satisfy.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, ----, 131 S. Ct. 2541, 2551 (2011).  Rule 23(a) requires a plaintiff to affirmatively demonstrate that the proposed class is sufficiently numerous, that it presents commons questions of law or fact, that the class representative brings claims typical of the class, and that the class representative will adequately represent the class.  If a plaintiff establishes each element of Rule 23(a), he or she must also satisfy one subsection of Rule 23(b).  This analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores*, 131 S. Ct. at 2552 n.6.

---

[2] Defendants additionally challenged typicality and adequacy based on the initial class description which would have encompassed a larger swathe of cell subscribers.  Those challenges appear to have fallen aside in light of the new class description.

[3] Defendants' Motion to Strike, docket no. 226, is STRICKEN as moot.

ORDER - 3

**B.    Rule 23(a)**

*1.    Ascertainability*

Defendants first argue that the proposed class is not ascertainable because there are insufficient records to satisfactorily identify all class members. Although Rule 23 does not explicitly demand that a class be ascertainable, the vitality of the requirement has been evident in numerous cases. *See, e.g.*, *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236-37 (N.D. Cal. 2014). In essence, the ascertainability inquiry looks to whether the Court can reasonably identify which individuals are class members and which are not. *Id* at 236 ("A class definition is sufficient if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." Plaintiffs bear the burden of showing that there are sufficient records to identify class members. *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 440 (N.D. Cal. 2014).

The critical element at issue is that the class is limited to those subscribers who never accessed the programs they signed up for. Thus, there must be objective evidence through which the Court can identify whether an individual "accessed" a program. *See Lilly*, 308 F.R.D. at 237. The only evidence cited by plaintiff is a spreadsheet which lists bids made in the "Bid & Win" game by users. *See* Suppl. Marshall Decl., docket no. 223, Ex. 5. Defendants argue that some users may have "accessed" the content they subscribed to without formally placing a bid by, for example, logging on and viewing what prizes were available for bid, and that they have no records which would show who

fell into this group.  In response, Geier cites to the deposition of Massimo Bonato, formerly the Vice President of Technical Operations of Mobile Messenger.  In that deposition, Bonato stated that an "engineer would control the log-in of a subscriber, would track it was [sic] one engine."  Marshall Decl., docket no. 209, Ex. B (Bonato Tr. 77:21-23).  The Court concludes that plaintiff has not met his burden of establishing that such records exist.  Geier has not presented these records, and defendants represented at oral argument that they simply do not exist.  That Mobile Messenger may have "tracked" log-ins while it was a going concern does nothing to establish that records were created and maintained to the present.   Geier has not met his burden to "produce sufficient evidence to show that such records can be used to identify class members," *In re Clorox Consumer Litig.*, 301 F.R.D. at 440, and thus the class is not ascertainable.

        2.     *Commonality*

To satisfy Rule 23(a)(2), plaintiff must establish that there are "questions of law or fact common to the class."  It requires that "the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).  However, the issue is not whether there are "common questions," but whether approving a class will "generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).  Because Geier brings this class pursuant to Rule 23(b)(3), he must satisfy the predominance requirement in addition to mere commonality.  As predominance is "more

ORDER - 5

rigorous" than commonality, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998), the Court will address predominance.

**C.     Rule 23(b)(3)**

*1.     Predominance*

"Considering whether questions of law or fact common to class members predominate begins … with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). In this case, plaintiff alleges that defendants have violated the CPA by engaging in an "unfair practice" by charging class member cell phone subscribers for products they never used. In addition, plaintiff alleges claims for conversion and unjust enrichment under state law.

In contrast to plaintiff's first motion for class certification which focused on the deception prong of the CPA, the new proposed class is based on the CPA's prohibition of "unfair" practices. RCW 19.86.020 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."). Although the CPA itself does not define what makes a practice "unfair," the Washington Supreme Court has borrowed from the Federal Trade Commission Act ("FTCA") to fill in this gap. A practice is unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013) (quoting 15 U.S.C. § 45(n)).

The CPA is modeled after § 5 of the FTCA which empowers the FTC to sue to prevent "unfair methods of competition in or affecting commerce, and unfair or deceptive

ORDER - 6

acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). The Washington State Legislature intended that Washington courts "be guided by final decisions of the federal courts" interpreting similar statutes, such as the FTCA. RCW 19.86.920. Geier relies primarily on three FTC enforcement actions which he contends stand for the proposition that it is an unfair practice for purposes of the FTCA, and thus the CPA, to knowingly operate a system which facilitates fraud upon consumers.

In *FTC v. Neovi, Inc.*, 604 F.3d 1150 (9th Cir. 2010), the FTC sought to hold the defendants liable under § 5 of the FTCA for operating an internet-based checking system which inevitably led to widespread fraud by users. The defendants argued the FTC sought to punish them for merely aiding and abetting violations committed by the fraudulent users, which is not cognizable under § 5. The Ninth Circuit disagreed, stressing that the defendants were not "liable under a theory of aiding and abetting. [Defendants] engaged in behavior that was, *itself*, injurious to consumers." *Id.* at 1157 (emphasis in original). The court stressed that deception was not required, but instead that an unfair business practice could result from "the actions of those who facilitate, or contribute to, ill intentioned schemes if the injury was a predictable consequence of those actions." *Id.* at 1156 (citing *FTC v. Winsted Hosiery Co.*, 258 U.S. 483, 494 (1922)). Because the defendants in *Neovi* had reason to believe that widespread fraud was occurring on its system, their continued operation of that system "facilitated and provided substantial assistance to a multitude of deceptive schemes." *Id.* at 1157.

A somewhat similar case, *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010), is also instructive. The defendants in that case sold internet products, such as

ORDER - 7

website maintenance and internet faxing.  Defendants billed their clients via Local Exchange Carrier billing which functions similarly to the carrier billing method at issue in this case except it used fixed landlines rather than cell phone accounts.  *Id.* at 994-95.  The defendants entered into an agreement with foreign call centers to solicit clients via cold calls, with call centers receiving a cut of any sales.  Predictably, this arrangement led to rampant fraud.  Despite billing hundreds of businesses for these "products," only a miniscule fraction ever used them.  Defendants also outsourced internet-based marketing to a company which delivered nearly 80,000 "sales."  *Id.* at 994.  Surveys of both sets of customers revealed that the overwhelming majority had no idea that they had "purchased" products from defendants or that they were being billed.  *Id.*  Relying on *Neovi,* the court held on summary judgment that this arrangement was an unfair billing practice which violated § 5 of the FTC.  *Id.* at 1003-04.[4]

Geier's reliance upon these FTC enforcement actions is likely the result of the paucity of Washington cases interpreting the unfair practice prong of the CPA.  Arguably not until the Supreme Court of Washington's decision in *Klem* was it wholly clear that "an act or practice can be unfair without being deceptive."  176 Wn.2d at 787.  Unfortunately, the *Klem* court also observed that that "case does not give us an

---

[4] Geier's other cases are similar.  In *FTC v. Accusearch, Inc.*, 2007 WL 4356786 (D. Wyo. Sept. 28, 2007), the court determined that the defendants operated a site which facilitated the violation of privacy laws by allowing customers to purchase confidential telephone records from independent researchers.  *See also FTC v. Windward Marketing, Inc.*, 1997 WL 33642380 (N.D. Ga. Sept. 30, 1997) (defendant liable for facilitating telemarketing sales scam).

ORDER - 8

opportunity to explore in detail how to define unfair acts for the purposes of our CPA. That must wait for another day." *Id.* at 787-88.  That day has not yet arisen, with the overwhelming majority of CPA cases focusing on the deception component.

Where Geier's argument fails is that the FTC does not bring suits subject to the strictures of Rule 23.  While these decisions may strongly suggest that had the FTC acted against Mobile Messenger it would have been successful, they do little to demonstrate that class members' claims can be proven with a common showing of fact.  The parties have not cited any, and the Court has been unable to discover, any cases involving class actions using the CPA's unfair practice prong.   Nevertheless, the Court concludes that the unfair practices test would result in individual issues predominating over common ones.

The parties contest whether two elements of the unfair practice test, namely, whether the injury was reasonably avoidable by consumers and whether the practice provided countervailing benefits, will require individualized showings.  Geier's argument is that the test is objective, analyzing each element on a consumer-wide level.  In contrast, defendants contend that whether an injury was "reasonably avoidable" turns on what information was available to the class member and that any benefits varied between class members and cannot be resolved with common proof.

In *Rush v. Blackburn*, 190 Wn. App. 945, 361 P.3d 217 (2015), an individual plaintiff brought suit under the CPA's unfair practices prong.  The plaintiff's vehicle was towed by the defendant and sold at auction before the plaintiff could contest the impoundment. In determining whether the harm (*i.e.*, sale of the vehicle) was reasonably

ORDER - 9

avoidable, the court looked to communications the plaintiff received from the defendant. *Id.* at 966-67 (highlighting the "impound notice and impound hearing request forms that" the defendant provided the plaintiff).  The Washington Court of Appeals concluded that although the test looked to how "a reasonable consumer" would act, the test takes into account the individual circumstances of the plaintiff.

Although no courts have interpreted the Washington CPA's unfair practices prong in the context of a class action, the Court finds some guidance in a case interpreting Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") which is also modeled after the FTCA.  *See* FLA. STAT. § 501.201 *et seq.*  The FDUTPA outlaws, among other things, "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 501.204(1).  In a case brought in federal court, the plaintiffs brought three purported class actions[5] against court-reporting firms alleging an unfair practice by charging the same rate for transcript pages and index pages.  *See In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices*, 715 F. Supp. 2d 1265 (S.D. Fla. 2010) ("*In re Motions*"), *aff'd sub nom. Webber v. Esquire Deposition Servs., LLC*, 439 Fed App'x 849 (11th Cir. 2011) (per curiam).  The court concluded that the plaintiffs were "unable to show on a class-wide basis that the alleged injury was not 'reasonably' avoidable.'" *Id.* at 1278.  Specifically, that court highlighted that different class members would have varying knowledge of the charges, meaning some would be

---

[5] Although the court did not formally consolidate the three actions, it concluded that the "overlapping legal issues" supported addressing them together.

able to reasonably avoid the charges.  *Id.* (concluding that an "individualized inquiry is necessary to determine whether the index charges were reasonably known and avoidable").  The court additionally held that the "countervailing benefits" element requires individualized showings of proof.  *Id.* at 1278-79.

In light of the Washington Court of Appeals' decision in *Rush v. Blackburn*, the Court concludes that *In re Motions* demonstrates the proper analysis of the interplay between the unfair practices prong of the CPA and the requirements of Rule 23.  While plaintiff is correct that the test is "objective," that premise does not result in the conclusion that individual circumstances are irrelevant.  Instead, courts look to how a reasonable consumer (i.e., an objective test), would act in the specific facts presented. Whether the harm was reasonably avoidable in this case for class members necessarily turns on what information the class members saw.  While a class member who viewed a landing page that made no mention of charges may not have reasonably been able to avoid the harm, a class member who saw a landing page which prominently advertised the terms and conditions would likely have been able to.[6]  Because that analysis requires looking into the individual interactions class members had with dozens of different content providers making varying representations, the Court concludes that individual

---

[6] There is no dispute that the content of communications was anything but uniform.  A Mobile Messenger employee testified at deposition that "every campaign, every Bid & Win campaign would have been different, so not only the shot code, but also the look and feel."  Marshall Decl., docket no. 209, Ex. B (Bonato Tr. 77:16-18).

ORDER - 11

issues predominate in determining whether the conduct was unfair under all the circumstances.

   2.   *Superiority*

The Court also concludes that a class action is not the superior method of resolving this controversy.  Each cell carrier settled with federal agencies over their participation in the PSMS industry, agreeing to cease the operation of PSMS billing for commercial enterprises and to provide refund pools of millions of dollars and to provide notice to effected subscribers.  *See, e.g.*, Tewell Decl., docket no. 189, Ex. D (CFPB Consent Decree).  Class members are able to receive compensation directly from the carriers, and thus it would be wasteful of judicial resources to litigate a class action over the same issues where class members are able to obtain full recompense without the cost of litigation.  *See In re Phenylpropopanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 621-23 (W.D. Wash. 2003) ("It makes little sense to certify a class where a class mechanism is unnecessary to afford the class members redress.").  During oral argument plaintiff's counsel suggested that there is no proof that any class members had taken advantage of these refund pools, but it is the plaintiff who bears the burden to show that a class action is the superior method.  Plaintiff has failed to do so.  Further, notice provided to effected subscribers as a result of the settlements was superior to any notice that could be provided through Mobile Messenger issuing subpoenas to the carriers based on the limited records still in its possession.  Ultimately, this suit seeks to replicate an award of

damages which has already been made available through regulatory settlements and is thus not the superior method of resolution.[7]

*Conclusion*

The Court concludes that the class is not ascertainable, individual issues predominate over common ones, and that a class action is not the superior method of resolution. The Court also concludes that any future motion would be futile, and thus plaintiff's motion is DENIED with prejudice. *See Mazur v. eBay, Inc.*, 257 F.R.D. 563, 572 (N.D. Cal. 2009).

IT IS SO ORDERED.

Dated this 24th day of June, 2016.

Thomas S. Zilly
United States District Judge

---

[7] The Court additionally DENIES the motion with respect to Geier's two common law claims of conversion and unjust enrichment. The Court previously denied certification as to these claims in its earlier Order, and plaintiff has offered no explanation as to why that decision was flawed. Each class member would require, in effect, a mini-trial as to whether the circumstances of his or her claim meant the retention of funds was "unjust," or whether defendants had "lawful justification" for billing that class member.

ORDER - 13